### DAVIS v. DICKSON et al.

1. In debt on a guardian's bond, it is sufficient if the breaches are assigned in the replication, and it is not error that the declaration is on the penalty merely.
2. Such action must be in the name of the Judge of the County Court, for the use of the person injured.
3. It is however sufficient, if the declaration shews for whose use the suit is brought, it is not indispensable that it appear in the writ.
4. Nor is it necessary that it appear in the declaration in what particular manner he has become interested.
5. The bringing of the suit is sufficient evidence that the person injured requested it to be instituted.
6. Where a party pleads in abatement to the writ and declaration, and the plea is overruled on demurrer, he cannot insist on the same matter in arrest of judgment, if he has pleaded over.
7. The record contained three pleas, which were demurred to, but no disposition of them appeared. There was a trial on the merits, and motion in arrest of judgment. Held, that the motion in arrest was an abandonment of the pleas.

THIS was an action of debt in Franklin Circuit Court, in which "James Davis, Judge of the County Court of Franklin county, successor of William Lucas," was plaintiff, and "Michael Dickson and John Davis" were defendants, instituted in 1824, to recover on a bond made by Dickson as principal, and Davis and one Thomas, as his securities, dated in May 1820, payable to Lucas, as Chief Justice of the County Court of Frankin county, and his successors in office, in the penalty of $20,000, conditioned, that Dickson, who had been appointed guardian of Nancy Rogers, an infant, should well and truly perform the duties of guardian. The declaration was on the penalty of the bond, without noticing the condition, or assigning special breaches, the usual breach only of non-payment of the money

being alleged; and in the declaration, it was stated that the suit was brought "for the use of Thomas W. Shearon," which did not appear in the writ. The defendants craved oyer of the bond and condition, and pleaded in abatement to the writ and declaration, because it did not appear in the writ what right James Davis had to sue, or for whose use the suit was brought, and because, by the declaration, it appeared to be for the use of Shearon on a guardian's bond, when it did not appear that he had any interest, &c. This plea was demurred to, and the demurrer was, by the Circuit Court overruled. The defendants then pleaded four pleas. To the three first pleas, the plaintiff demurred, but the record does not shew that any disposition was made of these demurrers.

The fourth plea, after craving oyer of the bond and setting out the condition, averred performance of the condition; to which the plaintiff replied, assigning breaches, and to this there was a general rejoinder and issue to the country. At March term 1828, the plaintiff obtained a verdict for $9,680 20, and judgment was entered for $20,000, which might be dicharged upon the payment of $9,680 20.

The defendants moved that this judgment be arrested, for the following reasons: 1st, that there was no cause of action in the plaintiff's declaration. 2d. That it did not appear that James Davis had any right to commence the action. 3d. That it does not appear in the original writ, for whose use the suit is brought. 4th. That the declaration was on the bond of the guardian of Nancy Rogers, for the use of Shearon, without shewing what interest Shearon had in the action, or how he became entitled to an action on the bond. 5th. That the original writ did not shew any cause of action, or that James Davis had any right to sue. 6th. That it did not appear from the writ or declaration, that any one had sustained an injury, nor did the writ disclose for whose use the suit was commenced. And 7th, that the writ and declaration shewed no default in Dickson as guardian. On these reasons, the Circuit Court arrested the judgment, and tó reverse this decision, the plaintiff prosecuted his writ of error to this Court.

HOPKINS and W. B. MARTIN, for the plaintiff in error. There is no error in the writ and declaration, but if there was, the same matters which were relied on to arrest the judgment, were previously pleaded in abatement, and af-

ter the determination of the demurrer to that plea, the defendants elected their course, and pleaded over; thereby they waived all benefit of the objection. If they wished to insist on those matters, they should have relied on the plea, and not pleaded over. *a* There was a full and fair trial on the merits, and a verdict for the plaintiff. All errors were waived by going to trial without relying on the pleas, if any had previously intervened. *b*

GAYLE, for the defendants.

By JUDGE TAYLOR. The plaintiff in error is understood to insist, that the judgment below should be reversed for the following reasons, viz. 1st. There was no error in the writ, declaration or other proceeding below. 2d. The plea in abatement included all the ground taken on the motion to arrest the judgment, and the defendants submitted to the correctness of the decision on the demurrer to that plea, by pleading over, and thereby waiving their right to any advantage on account of that error. 3d. In arresting the judgment, the Circuit Court revised and reversed its own decision, which had been made in sustaining the demurrer to the plea in abatement, which it could not do. 4th. That all the errors in the pleadings, if any there be, are cured by the verdict.

In the case of *Parks & Burke v. Greening,* *c* it was decided by this Court, that if a defendant submits to plead over after a demurrer to his plea in abatement is sustained, he acquiesces in the decision of the Court, and cannot afterwards have that opinion reversed. There is no disposition now felt to disturb this decision; and certainly by applying it to this case, the investigation might be considerably shortened. But the Court is willing to settle the points which have been raised in the cause, without taking shelter under this rule. I will, therefore proceed to examine the reasons assigned on the motion made in the Circuit Court to arrest the judgment.

The first is, "that there is no cause of action in the plaintiff's declaration." I understand this to mean, and it has been so argued by counsel, that the declaration is insufficient in not setting out the condition of the bond, and assigning breaches thereof. Previous to the statute, 8 and 9 *William III.*, in actions instituted on penal bonds, the plaintiff had judgment and sued out execution for the full amount of the penalty, where a breach of the condi-

JANUARY 1830.

Davis
v.
Dickson et al.

*a* Minor's Alab. R. 84–178.

*b* 1 Fonb. Eq. 315. 13 John. R. 437. 2 Day's R. 112. Laws of Alabama, 176–189-383-385. Statutes of jeofails of 1824 & 1825.

*c* Minor's Ala. R. 178.

tion was proved.    At that period, suits were always
brought, and plaintiff's declared for the amount of the
bond; the declaration simply recited the amount for
which the bond was given, and averred a breach in the
non-payment of that sum; [a]   the defendant then craved
oyer of the bond and condition, and pleaded performance
of the condition; whereupon the plaintiff replied, assign-
ing breaches, upon which the parties went to trial, and if
the plaintiff proved a breach of the condition by the de-
fendant, he had judgment and execution for the whole
amount of the bond, without regard to the damages, which
he really might have sustained.   The great injustice which
was often done by judgments of this description, induced
Courts of Chancery to interfere at an early day, by injoin-
ing the amount of the judgment, except the damages actu-
ally sustained.   The statute above mentioned, was passed
with the single object of enabling Courts of law to do that
justice, for which a resort to Chancery had been neces-
sary.   It was not the intention of the framers of the law to
vary the remedy further than was necessary to secure the
right.    Plaintiffs were authorised to assign as many
breaches as they thought right, when, before, only one
was permitted to be assigned.   But the reason of this is
obvious.   Previous to the statute, the proof of any one
breach, was sufficient to fix the defendant with the whole
amount of the bond, and it would have encumbered the
record, and increased the expenses of the suit, by adding
more, without producing any corresponding advantage.
But after this statute was passed, the recovery was pro-
portioned to the injury, and as every additional breach
produced an additional injury, of course it became essen-
tial to the plaintiffs right to permit him to assign as many
as he could hope to prove.   But it was of no importance
that he should make this assignment in any way different
under the statute, from what had been customary at com-
mon law; accordingly we find the statute altogether silent
on this subject; and that the practice formerly pursued,
is still retained in England. [b]

[a] See 1 Will-
iams' Saund.
51.

[b] See 1 Will-
iams' Saund.
73.

But it is urged by the counsel for the defendant, that
there is no instance in which the law authorizes Judges of
County Courts, as such, to take bonds for the mere pay
ment of money.   That all the bonds which they are per-
mitted to take officially, must be given with conditions, to
be discharged by the performance of some duty; that the
declaration must shew, that a bond thus taken, is not a

JANUARY 1830.

Davis
v.
Dickson et al.

mere money bond, or it does not accord with the statute which gives the authority. This objection may be answered in different ways. For aught that appears on the declaration in the present case, except that the suit is brought by the plaintiff as successor of William Lucas, the words "Judge of the County Court of Franklin county," might have been mere words of description, and it would have devolved upon the defendant to shew they were not. But if the bond was taken officially, this must be made to appear in some part of the record, and a defence would be equally available if the breaches are assigned in the replication, or suggested on the roll, as when such assignment is made in the declaration. The 24th section of the act of the Mississippi Teritory, passed in 1811, entitled "an act, regulating judicial proceedings in certain cases, and for other purposes," so far as this point has been considered, corresponds with the statute of *William III.* I am therefore of opinion, that there is cause of action in the plaintiff's declaration.

The second reason given on the motion in arrest of judgment, is, that "it does not appear from the proceedings in the said cause, that said James Davis had any right to commence an action."

*a* Laws of Ala.
383.

By an act passed in 1803, *a* the power of appointing guardians to minor's, is vested in the Chief Justice of the Orphan's Court. The Chief Justice of the Orphan's and of the County Court, was at that time one and the same person, and there was an officer of this kind in each county. It has not been contended in argument that this bond is void, because it was given to "William Lucas, Chief Justice of the County Court," instead of "William Lucas, Chief Justice of the Orphan's Court." This point was not made below, nor could it now be here; and if it could, I do not believe it would avail the defendant any thing to raise it.

By the 25th section of the act last referred to, it is provided that "bonds given by executors, administrators and guardians, and all other bonds taken in the said Court, shall be made payable to the said Chief Justice, and his successors in office. By the 39th section of the same act, it is declared, "that in case any bond become forfeited, it shall and may be lawful for the Chief Justice of the Orphan's Court, to cause the same to be prosecuted at the request of any party grieved by such forfeiture, and it shall not become void upon the first recovery," &c. The

bond, which is the foundation of this action, was taken by
virtue of this statute.

After the adoption of our constitution, and the admission of Alabama into the Union as a State, viz. in 1821, our County Court system was recognized; a County Court, consisting of one Judge, was established in each county, and in him was vested all the powers previously exercised by the Chief Justice of the Orphan's and County Court. The law making this change in the County Court system, enlarges, in some instances the jurisdiction of the Court, and specifies many of the powers of the Judge. It defines, at considerable length, the manner in which letters testamentary and of administration shall be granted by him, prescribes the form of a bond to be executed by executors, administrators or guardians, and in the same section in which that form is prescribed, *a* and immediately after, there is the following provision: "Such bond shall not become void on the first recovery, and may be put in suit, and prosecuted from time to time, against all or any one or more of the obligors, in the name, and at the costs of any person or persons injured by a breach thereof, until the whole penalty shall be recovered thereon."

*a* Sec 13, page 196.

It is urged by the defendant's counsel, that this provision is the one, and the only one, under which the action on the bond sued on in this case, could have been properly instituted; that it should have been brought "in the name of the person injured," and not in that of the Judge of the County Court.    It has already been decided by this Court, in the case of *Murphy v. May*, *b* that the correct construction of this clause is, that the action should be brought in the name of the obligee for the use of the person interested; thereby effecting the object of the act in making the party seeking the redress responsible for the costs. I would hesitate long before I could consent to introduce such an anomaly in practice, as an action in the name of one man on a bond given to another, without an assignment.

*b* 1 Stewart's R.

The 20th section of this act of 1821, contains a provision which embraces, in its commencement, a bond of this description.    It begins by declaring "that all bonds and recognizances, which may have been given or made payable to the justices of any County Court, or Orphan's Court, or to the Chief Justice of such Courts, heretofore established by the laws of the Mississippi Territory, or of the Alabama Territory, or of this State, shall enure and

be payable to the Judge of the County Court of such county, and his successors in office." Thus far the section is plainly applicable; the only difficulty results from the words which follow those last recited, which are these, viz. "for the use of the county, and suits may be prosecuted, and judgments recovered thereon, in the name of such Judge, or any of his successors, &c. It is not to be supposed that the General Assembly intended, that executors, administrators and guardians bonds should be sued on for the use of the county; there is no doubt that this clause of the section was intended to refer to recognizances on bonds of a public nature, the money arising from which, was to be paid into the county treasury when collected; and I consider the inference fair, that on other bonds it was intended that suits should be brought in the same way, that is to say, in the name of the Judge of the County Court, for the use of the person interested.

I come now to consider the 3d reason for the motion in arrest of judgment, viz. "there is nothing in the original writ which shews for whose use the suit is brought." The object of the law in requiring that suits of this description shall be brought for the use of the person injured, or alleging himself so to be, has already been explained. In this way, the Judge of the County Court is to be protected from responsibility for costs. This also, is the exposition given of the statute in the case just cited, of *Murphy v. May*, in which case a judgment sustaining a demurrer to the declaration on the ground that it did not appear for whose use the suit was brought, was affirmed. But it has no where been determined, that this should appear in the writ. In the present case, the declaration does set out, that the suit is brought for the use of Thomas W. Shearon, thereby rendering him liable to a judgment for costs in the event of a successful defence. For my own part, however, I should feel much inclined, were it necessary, to overrule the opinion in the case of *Murphy v. May;* that decision would seem to preclude the Judge of the County Court from protecting the rights of minors, by voluntarily instituting actions on the bonds of guardians, executors, &c. It certainly would never be determined, that if he saw the estate wasting away by the misconduct of persons filling these trusts, that it would not be in his power to protect the interests of infants, by instituting actions on the bonds of the trustees for their benefit, although they might be too young to be aware of the jeopardy in which

JANUARY 1830.

Davis
v.
Dickson et al.

their property was placed, and of course could make no request which would render them responsible for the costs.

The 4th reason offered in arrest of judgment is, that the declaration does not shew what interest Thomas W. Shearon, for whose use the suit is prosecuted, has in the estate of Nancy Rogers, the infant, to secure whose rights the bond was given. It is clearly unnecessary that any thing of the kind should have been shewn by the plaintiff; whether the defendant would have been permitted by plea or otherwise, to bring this point before the Court, it is not necessary now to determine. It may probably be a fact which the Judge of the County Court is alone to decide on, when the application is made to him to bring the suit; and it might render him responsible to those really interested, were he to permit a stranger, by the use of his name, to recieve money to which others were entitled.

The subsequent reasons are included in those already considered. It has been argued, however, that the proceedings are fatal in not shewing that the person for whose use the suit is brought, had requested the plaintiff to institute the action. This is believed to be proved by the institution of the suit itself. Whenever an action is brought on a bond of this description, for the use of any third person, it is to be inferred that he has directed the Judge of the County Court to bring the suit; and if this presumption be untrue, he has an easy mode of making it appear by dismissing the suit.

Since writing the foregoing, I have read the opinion delivered in this Court, in the case of *Fuqua v. Stone.* [a] The proceedings and judgment of the Circuit Court in that case were so evidently erroneous, that it is probable it went off without argument or much consideration. I am entirely prepared to overrule so much of that decision as relates to the necessity of assigning breaches in the declaration. The judgment in this case must be reversed; but the question recurs, whether is the cause to be remanded, or such judgment rendered here, as should have been rendered in the Court below.

[a] 1 Stewart's R. 435.

It does not appear that any disposition was made by the Circuit Court, of the demurrer to the three first pleas of the defendant; and it was insisted by the defendant's counsel in the argument, that if the judgment should be reversed, the cause should be remanded, that the demurrer to those pleas may be disposed of. A majority of the

48

JANUARY 1830.

Davis
v.
Dickson et al.

Court is of opinion, that the defendant abandoned those pleas, by moving in arrest of judgment before any decision of the Court had been pronounced upon them.

The Court here, therefore, must proceed to render such judgment on the verdict as should have been rendered by the Court below.

Judgment reversed and rendered for the plaintiff.