THE JUDGE OF MADISON COUNTY COURT *vs.* LOONEY, et al.

1. An action of debt on the bond of an executor or administrator, to enforce a settlement of accounts, and the payment of a legacy; can not be sustained until a decree has been rendered by the orphans' court.

This was an action of debt, commenced in the Circuit court of Madison, in the name of the Judge of the County court, for the use of one Stewart, et ux. against Looney and his sureties, on a bond, as executor. There were breaches assigned in the declaration, averring a failure on the part of the executor to return an inventory and appraisement; an account sales; or to make settlement of the affairs of the estate, &c. and also alleging a failure to pay to the said Stewart, et ux. a legacy. On demurrer, judgment was given for the defendant, and the case was brought by writ of error into this court.

*Craighead*, for plaintiff—*Brandon, contra.*

SAFFOLD, J.—This was an action of debt, brought by the plaintiff in error, in the Circuit Court, on the bond given by Looney, as executor of the last will and testament of Owen Campbell, against said Looney and his securities to the bond. The declaration sets forth the bond, and condition, in the usual form. The amount of the bond is six thousand dollars, payable to the plaintiff and his successors in office; conditioned that Looney, executor as aforesaid, " should well and truly perform all the duties, which then were or should be, by law, required of him, as executor," &c. It states that the testator died seised and possessed of a valuable tract of land, two negroes,

stock, &c. ; that by his will he devised and bequeath-
ed a life estate in said property to Elizabeth his wi-
dow, with condition, that at her death, the land should
be sold and divided among his six children, Catha-
rine, the wife of John Stewart, being one—each to
have one-sixth part of the proceeds ; that the said
Elizabeth, the widow, presently thereafter died ; that
thereupon Looney made sale of the personalty, and
also of the land, each at large sums, viz. the former
at one thousand dollars, and the latter at one thou-
sand one hundred and sixty dollars.

The plaintiff then proceeds to assign as breaches
of the condition of the bond ; that the defendant as
executor, neglected and failed to make and return any
inventory and appraisement ; or any account of the
sales, or to make any settlement concerning the same,
according to the will ; also that he had and still did
fail and refuse to pay to the said John Stewart and
Catharine his wife, the one sixth part of the two sums
produced by said sales, or any part.

To this declaration the defendants demurred. The
court sustained the demurrer, and gave judgment
for the defendants.

This judgment is the cause assigned for error.

The question presented by the record is, do the
facts and circumstances, stated in the declaration, af-
ford a cause of action in debt ; cognizable in the Cir-
cuit Court. In support of the affirmance of the pro-
position, much reliance is had on our statute of 1803,
" concerning wills,"[a] &c. ; which, after requiring [a]Toul. Dig 332.
bonds from all executors and administrators, provides,
by the 39th section, that in case any such bond shall
become forfeited, the same "shall be prosecuted from
time to time, at the request of any party aggrieved,

until the whole penalty be recovered thereon ; and the monies recovered upon such bond shall be applied towards making good the damages sustained by the not performing the condition thereof, in such manner as the orphans' court, by their sentence, or decree, shall direct." It is also provided, in the 42d section of the same act, " that co-executors, or co-administrators, who may refuse, properly, to account between themselves; may have the action of account against each for their parts of the estate in the hands of the other ; and any other residuary legatee may have the like remedy against the executors ; and any person having a legacy bequeathed in any last will and testament, may sue for and recover the same at common law." That it may appear more fully to what extent the court should be influenced on this question by statute regulations, it is necessary to notice them farther.

The "act concerning the distribution of intestate's estates,"[a] passed in 1812, authorises any person to whom a distributive share, or legacy of an estate is due, to petition the county court, setting forth his claim, whereupon it shall be the duty of the court, to grant a rule upon the executor or administrator to make the distribution agreeably to law. Also, in 1816, "an act to compel executors, guardians, and administrators, to settle their accounts," was passed, providing that when any executor, &c. shall be cited before the orphans' court to settle his accounts, and shall fail, the court shall have power to issue an attachment against the person in the same manner that the superior courts might do, for disobedience to any order, judgment, or decree, and to summon a jury if necessary.

[a] Toul. Dig. 335.

Let it be here observed that these two latter acts, were passed many years after the one recited, which speaks of the right of any persons aggrieved, to sue from time to time, on any bond of an executor or administrator, and which authorizes the action of account, or suit at law, for the settlement of estates; that the 39th section of the act of 1803, does not define the particular circumstances under which the suits may be had on the bond, nor expressly dispense with the necessity of having the legacy or distributive share specifically ascertained by the will, or by a settlement before the orphans' court, or by adjustment between the parties, previous to the suit on the bond. Nor does the 42d section expressly recognise any other action at law than the "action of account." The action of account, being a suit at *common law*, it is not improbable that this section contemplates only this form of remedy, and that it should be prosecuted against the executor or administrator alone, in order to ascertain the amount, if any, for which he may be responsible on account of assets. It seems to have been designed mainly for the settlement of controversies between co-executors and administrators themselves, in respect to the assets; and to authorise the recovery of any residuary legacy against the executors. So far, the remedy given by this section is expressly confined to the action of account. The concluding clause, which immediately folllows. "that any person having a legacy bequeathed in any last will and testament, may sue for and recover the same at law," must, we conceive, be construed as referring to the same form of action; or if to a different action, it must be one adapted to the

rules of the common law.  Supposing the legacy to
be specific, either in money or goods; or to have been
liquidated and ascertained by a settlement before the
orphans' court, or by agreement between the parties,
there would appear to be no valid objection to the re-
medy at law, either in *trover*, *assumpsit*, or *debt*, ac-
cording to the circumstances.  The propriety of this
construction derives strength from the circumstance,
that the language of the section does not extend the
like remedy to persons entitled to distributive shares
of an *intestate's estate.*

A variety of circumstances might render the ac-
tion of debt on the bond, necessary as directed in the
39th section of the act referred to ; legacies, or distri
butive shares, may have been ascertained in either of
the modes mentioned, or by suit in chancery, and the
executor or administrator has failed or refused to dis-
charge them; in such cases, and perhaps some others,
the remedy may be sought on the bond against the
executor or administrator and the securities, as pre-
scribed in this section.  The authority given in the
conclusion thereof to the orphans' court, may often
be found necessary, as the suit may be brought for the
use of several legatees or distributees, who are jointly
entitled, but in different proportions; or other circum-
stances may occur to vary the amount of distribution.
In such case it might be proper that the moneys re-
covered on the bond should be applied towards mak-
ing good the damages arising from the breach there-
of, " in such manner as the orphans' court, by their
sentence or decree, may direct."    It is also worthy of
notice, that the statutes require, in all cases, full and
final settlements of decedents' estates, to be made be-
fore the orphans' court ; and the two cited of most

recent date, confer all the power, which in ordinary cases, could be supposed necessary to effect the object.

The case of Pettigrew vs. Pettigrew,[a] was cited as an authority in aid of this action. This was an action of debt for a legacy, against one who had been appointed executor in South-Carolina, alleging that the defendant had there received a certain amount of money, to which the plaintiff was entitled as a legacy— by reason whereof, he became liable, and undertook and agreed to pay it. On general demurrer to the declaration, the Circuit Court gave judgment for the plaintiff, which this Court affirmed. The demurrer had the effect to admit the specific debt, and the defendant's agreement to pay it; and the suit was against the defendant individually. Under this state of the pleadings, the ordinary objections to this form of remedy did not apply.

[a] 1 Stewart 580.

The case of James Davis, Judge, &c. vs. Dickson & Davis,[b] which was also referred to by the plaintiff in error, is in like manner distinguishable from this.— That was an action of debt in the name of the Judge of the County Court, for the use of a ward, against the guardian and his security, on the guardian bond. The declaration was on the bond alone, without noticing the condition; the defendant craved oyer of the condition, and plead performance thereof. To this the plaintiff replied, assigning breaches, to which there was a general rejoinder and issue. There were other questions previously raised in that case, which however, do not affect the principles involved in this; nor does any point then adjudicated, unless it be that the court recognised the 29th section of the act of 1833, "concerning wills," &c. as authority to sustain that action upon the bond. The statute provisions

[b] 2 Stewart 370.

respecting the duties and responsibility of guardians, will be found by reference to them, (as contained in various acts,) essentially different from those concerning executors and administrators; and it must necessarily be so, on account of the different attitudes in which they stand in relation to the interests represented by them. Before a guardian can receive the portion of his ward, the same must be ascertained, and severed from the residue of the estate; consequently, a subsequent controversy respecting such share, does not involve the general accounts of the estate, or the rights of any other distributee. It is otherwise in a suit, for distribution, against an executor or administrator, unless there has been some settlement, in one of the modes previously alluded to.

But in relation to both of the cases referred to, as having been decided by this Court, it would be sufficient to remark, that nothing is shewn in either, to preclude the idea, that the shares sued for, as well against the executor as the guardian, had been ascertained by some previous order or settlement in court, or otherwise.

On the part of the plaintiff in error, it is contended, that this action upon the bond, under the circumstances of the case, ought to have been sustained, according to various decisions in Kentucky and Massachusetts. To test the principles of the decisions referred to, it is sufficient to notice the cases that were read.

The case of *Storer, adm'r* vs. *Storer, et al.* excluding the questions which have no application to this case, only decides, that after a decree has been rendered in the probate court of that state for a specific amount, appearing on the settlement of the ad-

ministration account to be due from the administrator
to a creditor, and which decree directs the adminis-
trator to pay over the same, then the creditor, or his
administrator may sustain an action of debt on the ad-
ministration bond ; or the like action against the ad-
ministrator alone, and may declare on the decree of
the probate court as on a judgment.

The principle of decision is the same in the case of
Cony, Judge, &c. vs Williams, et al.[a]  The person for
whose use the action of debt on the administration
bond was brought, had recovered a judgment against
the administrator, who on request, had refused to pay.
Sewall, J. in delivering the opinion of the Court, says,
the non-payment of a debt is not a breach of an ad-
ministration bond, as taken in England by virtue of
the statute of Car. II, and the condition of an admi-
nistration bond, as taken by the judge of probate with
us, is in the same words.   By the statute directing
the forms of proceedings in suits on probate bonds,
the neglect of an administrator to pay the debts of the
deceased, is recognised as one of the cases, for which
an administration bond may be put in suit, for the
benefit of a creditor, *after his demand has been ascer-
tained by the judgment of the Court*, and payment
demanded of the administrator.

Another case reported in the same volume, (376,)
*Prescott, Judge, &c.* vs. *Pitts, et al.* rules, that where
an executor who was directed by the will to pay an
annuity, out of the proceeds of real estate, which he
was authorised to sell for that and other purposes, an
action of debt might be sustained on the administra-
tion bond—the neglect of the administrator to raise
the fund being considered under their statute an un-
faithful administration, and a breach of the condition

of the bond.   In that case, however, it is to be observed, the claim was in the nature of a specific legaacy, payable in money : it was an ascertained sum, payable annually.

[a]12 Mass. R 395.

The case of *Boyce* v. *Burrell, et al.*[a] is not in point. That case only decides the principle, that no action lies against heirs, unless where the creditor is unable, during the existence of the administration, to procure satisfaction.   Nor are heirs liable, within the time limited, for granting letters of administration, merely because no such letters have been granted.

Nor can the case cited from Kentucky, have any influence on this—*Saunders' heirs vs. Saunders' executors.*[b]—It relates alone to the right of devisees to

[b]2 Littel 314

sue executors in chancery, who have delayed to apply to the county court to appoint commissioners to settle their accounts, until after the commencement of the suit in chancery.   The court sustained the right, holding that, in consequence of the delay, the court of chancery had acquired jurisdiction, and the matter ought to be investigated there ; and that an *ex parte* settlement, made with the county court afterwards, could not be valid, or have any effect in the chancery suit.   It does not follow, that the court would have sustained an action at law, in favor of the heirs, under the same circumstances.   The rules of common law would have been wholly inadequate to the settlement of the estate.   The jurisdiction of chancery is better adapted to the purpose ; and, under peculiar circumstances of necessity, may rightfully exercise concurrent jurisdiction with the orphans' or county court, in the settlement of estates. Whether it was properly exercised in this Kentucky

case, might much depend on the statutes of that state. The question is unimportant to this case.

On the part of the defendant in error also, reference has been made to a case decided in Kentucky, *Moore, et al. vs. Waller's heirs.*[a] In that case the heirs had exhibited their bill in chancery, against the executor and his security, to recover the portion of the estate of their father to which they were entitled by his will. The legacies were not specific, nor had they been settled in the county court; and the executor had become insolvent, after receiving the legacies in money. A preliminary question raised in that case was, whether, as an action at law was authorised on the executor's bond by statute, the heirs were not confined to that mode of relief, and denied the right of an application to the chancellor.; and whether, as the liability of the executor had not been ascertained by a previous suit, the security could be proceeded against. The court of appeals held, that the remedy authorised by suit at law on the bond, having grown out of an affirmative provision, by statute, was, in its nature, *cumulative* only, and should not be construed to supersede any other, to which those interested might otherwise have had recourse; and in that view of the case, it was well settled, " that as incident to their powers in relation to matters of trust and account, courts of chancery may entertain jurisdiction, for the purpose of compelling executors and administrators to account and make distribution of the decedent's estate; and that as respects the necessity of having the executor's liability ascertained by a previous suit, before proceeding against the security, though it might be a correct doctrine in a proceeding at law, the want of it did not deny juris-

[a] 1 Marsh. 488.

diction to chancery. This decision, therefore, appears to admit the position, that before proceeding at law on the bond, the amount claimed must be ascertained by a settlement in the county court, or otherwise.

But many cases in other states are more clear and decisive on the subject. Among others, the case of *The Ordinary vs. Williams and Parkman, et al.*,[a] fully sustains the doctrine, that neither principal nor securities, in a bond to the Ordinary, for the faithful administration of the intestate's effects, can be sued on their bond, until they have been cited before the Ordinary to account, and a decree has been made by him; and that an executor, or administrator, cannot be compelled to account in the ordinary action of debt: that such a course would be taking them from the proper jurisdiction—the court of equity, or ordinary.

The same principle was held in the case of *The Ordinary vs. Powers.*[b] The court remarked, that if the common pleas should exercise jurisdiction in cases of this nature, it would be seen, at first glance, that the whole term might be employed in investigating the affairs of an estate, and then have made but little progress. In opposition to this authority, it is suggested that the statute is different in South Carolina from those in Kentucky, Massachusetts, and this state. We conceive there is no essential difference between them, or the statute of *Car.* 2, as respects the question under consideration.

It also appears, from various decisions in Virginia, that the same doctrine prevails there.[c]

We are, therefore, unanimously of opinion that the judgment below must be affirmed.

a 1 Nott & M'Cord 587

b 2 ib. 213.

c 1 Wash. R. 31—4 Hen. & Mumf. 277, and 1 Mumf. 1.