## MASON *vs.* McNEILL'S EXECUTORS.

1. Where counsel are retained by husband and wife jointly, to sue for and recover the wife's property, and a decree therefor is rendered in their joint names, if the husband dies before the execution of the decree by a delivery of the property to him, or to some person for him who holds as his bailee, the wife is entitled to it as property never reduced into the husband's possession.

2. The fact that the plaintiffs' counsel, after the rendition of the decree, permits the negroes in suit to remain with the persons to whom they were hired for the year, and does not take possession of them until after the husband's death, though he might have taken possession immediately, does not amount to constructive possession in the husband.

Error to the Circuit Court of Coosa.

Tried before the Hon. John D. Phelan.

Detinue by Matilda Mason, suing by her next friend, against the executors of John McNeill, deceased, to recover certain negro slaves alleged to be in their possession, which they claim as belonging to the estate of their intestate.

The suit appears to have been a friendly one, brought to test the right to the property. The evidence is all set out in the bill of exceptions; and, as there was no conflict in the proof, that the question of title might be fairly presented, the court charged the jury that the law arising upon the facts was adverse to the plaintiff's recovery. A verdict being returned for defendants, this writ of error is prosecuted to reverse the judgment thereon rendered.

23

As the facts are fully set out in the opinion of the court, it is not deemed necessary to state them in this place.

N. S. GRAHAM, for plaintiff in error :

There must be an actual possession by the husband, of the wife's chose in action, to destroy her survivorship.—Bibb v. McKinley, 9 Porter 636 ; Johnson v. Wren, 3 Stewart 172 ; Mayfield v. Clifton, *ib.* 375; Hogan v. Bell and Wife, 4 S. & P. 286 ; Magee v. Toland, 8 Porter 36 ; Dunn and Wife v. Bank of Mobile, 2 Ala. 152 ; 2 Hill's (S. C.) Chan. R. 504 ; 1 Kelly's R. 637. " Property is in possession, when a man hath both the right and also the occupation of the thing; it is in action, when a man hath not the possession, but merely a right to possess the thing."—Bibb v. McKinley, *supra;* 1 Kelly's R. 647.

When the names of both husband and wife appear in the pleadings, and where they are both necessarily used, as where the husband could not obtain a decree in his favor without the use of his wife's name in common with his own, in such cases, if the husband die after judgment, but before payment or execution, the judgment survives to the wife.—1 Dan. Ch. Pr. 150, 151 ; Nanney v. Martin, 1 Eq. Cas. Abr. 68 ; Bond v. Simmons, 3 Atk. 20 ; 2 Peere Williams 499 ; Dudley's Law and Equity R. 182 ; 6 Johns. Ch. R. 132 ; Searing v. Searing, 9 Paige 283.

The decree in the Georgia court, in favor of husband and wife jointly, does not destroy the wife's right to the property.—Bell *et al.* v. Bell, 1 Kelly's R. 645 ; Andrews v. Jones, 10 Ala. 423; 9 Paige 283 ; Hill on Trustees 415, 416, and marginal references.

It does not appear that plaintiff had notice of the proceedings in Georgia, and it is well settled that that question may be inquired into by the courts of this State.—Story's Conflict of Laws (2 ed.) 507, 508. And even if she had notice, her rights are not concluded ; there is no decree *pro confesso* against her, and her husband cannot answer for her, as it does not appear that she knew of or consented to such an arrangement.—Macaulay v. Philips, 4 Vesey 17 ; Clancy on Husband and Wife, 443, 444, 537, 560. The later and better doctrine is, that the husband cannot bar the wife's survivorship to property capable of

immediate possession, even for valuable consideration.—1 Dan' Ch. Pr. 154 ; and if this be so, can he bar her survivorship by his answer in chancery ?

But there is nowhere manifested any disposition or will on the part of McNeill to divest his wife of the property, or to destroy her right to it ; and even if he had possession, such possession may be qualified by his intention : as between himself and his wife, ownership follows his will.—Andrews v. Jones, 10 Ala. 423 ; 6 Watts & Serg. 290. There is no disagreement on the part of McNeill to the right of his wife ; and, until this done, the right to the judgment is in both husband and wife, and shall survive.—2 P. Wms. 496; Dudley's Law and Equity R. 183.

McNeill took no steps to enforce the decree, or to take possession. Toombs, as solicitor, was employed to represent the plaintiffs' interests in the case while pending ; with the termination of the suit, his duties ended. Besides, he expressly says, that he agreed with the administratrix to let the negroes remain with those who had hired them for the year 1843 ; he also says, that he obeyed McNeill's instructions, when any were given. Indeed, the testimony of Toombs negatives the idea that McNeill had possession of the property, or assumed any control over it, for it must be remenbered that Toombs was also the solicitor of the administratrix.

The effect of the decree cannot be regarded as having passed the property from the wife to the husband, even waiving the question of notice, first, because that was not the object of the bill ; secondly, because the decree cannot go beyond the case made by the parties or the pleadings ; thirdly, because the husband can have no greater interest in the property while in court, than he had before ; fourthly, because the decree simply finds and declares the rights existing by antecedent title.—Clancy on Husband and Wife, 119, 120 ; 10 Vesey 474, 578 ; 1 Kelly's R. 637 ; 4 Vesey 17 ; 1 Jac. & W. 456.

The cases of Pitts v. Curtis, and Machen v. Machen, are not applicable to this case. Each of those cases involves rather the inquiry of vested or contingent remainders. Besides, the assent of the legal representative to the delivery of the property, in those cases, is not the case at bar, for here the negroes did not belong to the estate represented by Ann Arnett ; it is not a case of distribution.

The cases of Forbes v. Phipps, 1 Eden 502, and Heygate v. Annesley, 3 Brown's C. C., are now held good authority.—See note (a) to the latter case.

L. E. Parsons and John White, *contra:*

The bill filed in Georgia, to which McNeill and his wife were made defendants, charges that McNeill claims the property ; the answer of McNeill and wife admits that he does claim it, and he asserts his right to it. McNeill died in the fall of 1843, after the rendition of the decree in favor of him and his wife. The testimony of Toombs shows that he regarded the property as in his possession and control from the date of the decree, and that he could have taken it into his possession at once, there being no objection ; " nobody offered any opposition to it ;" further, " he agreed with the administratrix to permit the negroes to remain where they were hired during the year 1843, because he feared, if he took them at once, he should be embarrassed in collecting hire for any portion of the year." It is insisted, that these facts are sufficient to show that the property was not adversely held by any one at the time McNeill died ; in fact, that the property must be regarded as in the possession of McNeill's agent and attorney ; at the end of the year Toombs collected the hire. Can it be possible that the possession was not changed in fact ? The following authorities are relied on.—Pitts v. Curtis, 4 Ala. 350 ; Heygate v. Annsley, 3 Brown's Ch. R. 361 ; Forbes v. Phipps, 1 Eden's R. 502 ; Macqueen on Husband and Wife, (39 Law Library) top pages 28, 44, 45, 46, 47, 48 ; Magee v. Toland, 8 Porter 36 ; 3 Litt. 275 ; Clancy on Husband and Wife 116.

The case of Searing v. Searing, 9 Paige 283, will be found, on an examination of the facts, to be in conflict with the decision of this court in Machen v. Machen, 15 Ala., in which it is said, " where personal property is bequeathed to a married woman, it only requires the assent of the executor to vest the title absolutely in the husband ; it is not necessary that it should be reduced to actual possession."

Toombs, as the agent of McNeill, had authority to exercise a sound discretion in the management of the slaves, after the rendition of the decree ; and having decided to let them remain where they were until the end of the year, this act must be re-

garded as having been done by McNeill in person.—Kimball v. Berry, 15 Vermont R. 421; Hopkins v. Willard, 14 *ib.* 478; Porter v. Viner, Chitty 613; Gorham v. Gale, 7 Cowen 744; Leach v. Williams, 8 Ala. 759.

CHILTON, C. J.—Matilda Mason was the widow of the late John McNeill, who died in Coosa County, in this State, in the fall of 1843, and was the daughter and only heir of Silas Catchings, deceased. Silas was the son of Benjamin Catchings, who died in the State of Georgia in 1798, leaving seven children, and a widow, Mildred; the latter administered upon his estate, and subsequently married one Carlton. Mildred having sold all the property of her intestate, and purchased it in, died in 1840, being possessed of all the property so purchased, together with what is called in that State "her widow's thirds," at the time of her decease.

Ann Arnett, the sister of Silas Catchings, having been appointed administratrix *de bonis non* of the estate of her father, Benjamin Catchings, upon the death of her mother Mildred, and also administratrix of the estate of Mildred, supposing the property to belong to her father, returned an inventory of it as of his estate; but a claim having been set up by said McNeill in right of his wife, the present plaintiff, to certain lands and the slaves now in controversy, by virtue of a contract entered into between Mildred and Silas Catchings, and being notified by the heirs of both Mildred and Benjamin to resist said claim on the ground of alleged unsoundness of mind on the part of Mildred when she entered into the contract, she filed a bill on the chancery side of the Superior Court of Wilkes County, in the State of Georgia, for the purpose of having the title to the property settled, and for the direction of the court in the matter of her administration, so as to protect her against the conflicting claims, and also against the consequences of her mistake in her inventory. The bill prays that McNeill and wife, Matilda, and the heirs of Benjamin Catchings and Mildred Carlton, be made parties defendants.

McNeill and wife residing in this State, so that they could not be reached by the process of the court, publication was ordered for them, with other non-resident defendants, to appear and answer, &c. In July, 1842, it appears another order was

made, reciting that publication had been duly made, as required by the previous order, and requiring the defendants to answer in four months next thereafter; but it does not appear that the bill was taken as confessed against any one.

John McNeill answered the bill, setting forth his marriage with Matilda, the present plaintiff, that she was the only child and heir of Silas Catchings, and claims in her right the share of the property belonging to her as the representative of Silas, her father; also, claims the negroes now in controversy by virtue of a bill of sale made by Mildred Carlton and her then husband, Spencer Carlton, to his said wife Matilda, dated the 1st January, 1822, purporting to convey the slaves to her in consideration of eight hundred dollars, and prays that they be decreed to him.

A special jury came, and found "that complainant should deliver over to John McNeill, the negroes, &c.," being the same now in suit. The decree, which is without date, is, that "the complainant (Ann Arnett) do deliver up to defendant, *John McNeill and his wife*, the negroes, &c."

The deposition of Robert Toombs, who filed the bill, as also the answer of McNeill, and signed the decree as solicitor for complainant, was taken on the part of the plaintiff; and he testifies that he "was employed by Col. McNeill in his life-time to represent his interest and that of his wife in a chancery suit then about to be brought in Wilkes Superior Court, in the name of Ann Arnett, adm'r of Mildred Carlton, against John McNeil and his wife Matilda and others," and he refers to the bill and pleadings to show the nature of their interest.

He also testifies that the decree was rendered at the February term, 1843, of said court, and adds, "I considered myself, as the attorney of McNeill and wife, entitled to the possession of the negroes at the time of its rendition. I merely postponed receiving them, because they had been hired for the year 1843, and I should have been embarrassed in collecting hire for any portion of the time, if I had taken them from the persons to whom they had been hired; but I considered my right to do so complete and perfect. I received them (naming the negroes) about the 1st of January, 1844. My books show my entry of them the third day of that month." On the same day he received in cash $605 17; says he knows of no reason for the delay in receiving the negroes, except the interest and conveni-

ence of Col. McNeill; that he had no authority in writing from McNeill, and received the negroes as attorney and solicitor for his clients. In the cross examination, the witness states that he " agreed with the administratrix to permit the negroes to remain where they were hired during the year 1843, for the reasons above stated, but he could have taken possession if he had thought proper; no body offered any opposition to it."

The plaintiff having proved that she was the wife of said McNeill when the proceedings above stated were had in Georgia, that the defendants were in possession of said slaves, and their value, and the defendants offering no proof, the court charged the jury, " that if they believed all the testimony, they must find for the defendants." The jury accordingly so found, and the only question is, whether the proof shows such a possession in John McNeill of the slaves as vested the property in him, or do they go to the wife as property not reduced to the possession of the husband.

Mr. Toombs proves that he was attorney for both McNeill and *his wife ;* and this may well be so, although she may never have said or written a word to him in regard to the retainer; for, although a married woman cannot in such cases make an attorney, yet, when sued with her husband, he makes the attorney for her.—Wigg v. Rook & Wife, 6 Mod. Rep. 86 ; Clarke v. Norris & Wife, 1 H. Bla. 235 ; 1 Salk. 115; 2 Strange 1272 ; 1 Bacon's Abr. by Bouvier 485 ; Story on Agency, p. 6 and cases cited in n. 1, (2d ed.)

Concede that, by virtue of his retainer as solicitor in chancery, he had the power to take the slaves into his possession, yet he did not do so until some months after the death of McNeill, and when the authority to do so, as to McNeill, was terminated by his death. He must, therefore, either have taken possession of them by virtue of authority of the plaintiff in this action through her husband, and which there is no evidence she revoked after her husband's death, or without authority. True, the witness states that, when he received them, he did not remember whether he had heard of McNeill's death ; but this cannot, in the least, affect the legal proposition, that the death of the principal operated a revocation of the power.

The proof does not show that McNeill authorized the agreement which was made with the administratrix, to permit the

slaves, which were ordered to be delivered to McNeill and wife by her, to remain hired out until the end of the year. Doubt-less it was a responsibility which Mr. Toombs was willing to take, as it would be better for the parties not to have an immediate execution of the decree under the circumstances; so that this cannot be construed into an exercise of dominion or authority over the property by McNeill; but conceding that the arrange-ment was made by his authority, it does not amount to any thing more than the postponement of the execution of the decree until after the hiring expired. The slaves remained precisely as they were when they were hired by the administratrix, and there was no consent shown on the part of those in possession that for the remainder of the year they should hold as the bail-ees of McNeill instead of Mrs. Arnett, or that they should deliver the slaves to McNeill or his agent, instead of the person from whom they had hired them, at the expiration of the term. We cannot perceive, therefore, how the slaves, being in the ac-tual possession of the persons hiring them, who held them under Mrs. Arnett, could be considered as in the constructive possession of Col. McNeill; and as the possession taken by Mr. Toombs could not enure to the benefit of Col. McNeill, who had previous-ly died, it follows that, unless the decree vests the property in him, McNeill had not at the time of his death such interest as would defeat the wife's right by survivorship.

What is the legal effect of this decree, which orders that "the complainant do deliver up to the defendant, John McNeill and his wife Matilda, the negroes, &c.?"

It will be observed that the decree is to them jointly, and not to the husband alone.

It would seem, upon principle, that to comply with the decree, the delivery must be made to both husband and wife, if living, but, if either be dead when it was made, then to the survivor; for, if it be true that the decree vests the property absolutely in the husband, the act of the court in decreeing it to be delivered to the wife as well as to him, would be unmeaning and useless.

The cases, however, upon this point are not at all consistent.

The first case which I have been enabled to find is that of Nanney v. Martin, 1 Ch. Ca. 27, (S. C. 2 Freem. 72,) which was decided so early as 1663, in which it was held, "If baron and *feme* have a decree for money in right of the wife, and the

husband dies, she shall have the benefit of the decree.

In Packer v. Windham, Prec. in Ch. 412, 415, it was insisted in the argument that, if the husband brought debt on the wife's bond, and recovered judgment, that altered the nature of the security, and made it the husband's; that by the recovery of the judgment, the debt was turned into *rem adjudicatam*, and could not therefore be a chose in action. But Lord Chancellor Macclesfield seemed to be of a different opinion, so far as the wife's right of survivorship was concerned, and thought that such judgment would not have defeated her right. Lord Cowper, C. J., however, held that, when the money was paid into court, it belonged to the husband, notwithstanding the court had power over it to retain the possession until the husband should make a provision for the wife.

In Bond v. Simmons, 3 Atk. 21, Lord Hardwicke said:— "Suppose, at law, a husband had recovered a judgment for a debt to the wife, and had died before execution, the wife would have been entitled, and not the husband's executor." Some twelve years after this decision, however, in the case of Garforth v. Bradley, this learned Chancellor held a different doctrine as to choses in action accruing to the wife during coverture; as to those, he said, the husband may disagree to the interest of the wife, and that being entitled to sue in his own name, a recovery in that form was equal to reducing into possession.—2 Ves. Sr. 676.

Afterwards, in 1790, the case of Heygate v. Annesley, 3 Bro. Ch. Rep. 362, was decided, in which a sum of money was ordered *to be paid to the husband* in right of his wife; the husband died before payment; it was held, that the right to the money vested in the husband, and it was ordered to be paid to his executor.

Eight years afterwards, in 1798, the case of Macaulay v. Phillips, 4 Ves. Jr. 15, was decided, which was a bill by husband and wife to have an account, and decree to the husband of the residue of the personal estate of a testator bequeathed to the wife, against the administrator *cum test. annexo*. Certain Bank consolidated three per cent. annuities being disclosed as the residue, amounting to £3000, standing in the administrator's name, the court decreed that the same be transferred to the Accountant General, and ordered the cause to stand over for a reference, and

proposals for a settlement on the part of the husband, to be laid before the master, &c. The husband and wife, living separate, but without legal sanction, agreed, out of court, to a partition of the fund, by which he was to take part and give up the rest. The husband died, and the wife claimed the entire fund, which was resisted by the husband's executor. The cases of Bond v. Simmons, Packer v. Windham, Heygate v. Annesley, and others, were cited. The Master of the Rolls said, "It was insisted that the payment of the funds into court made it absolutely the husband's, and a *dictum* for that is found in one case that was cited, but he could not agree to that, though it had not been, as it has been, *contradicted*;" he held, that the payment into court made no alteration in the right and property of the parties ; that the agreement between the husband and wife did not bind her, and that she was entitled, having survived her husband, to the whole of the fund.

Mr. Eden, in his note to Heygate v. Annesley, 3 Bro. Ch. R. 362, thinks the decision of Lord Northington in Forbes v. Phillips, 1 Eden's Cas. L. Nor. 502, and the determination of Lord Jeffries in Oglander v. Baston, which hold that the decree in the name of the husband alone vests the property, so shaken by the opinions of Lords Cowper and Hardwicke in Packer v. Windham and Bond v. Simmons, *supra,* as to be of extremely doubtful authority. He, however, inclines to the opinion that a decree in chancery, ordering payment to be made, and fixing the rights of the parties, and not reserving control of the funds for the purpose of a settlement by way of provision for the wife, would change the property, as he says " The whole transaction is completed, in which respect it differs from a judgment at law, where an ulterior step must be taken by the party recovering, to make it operate against the thing recovered, viz., the suing out a writ of execution."

It is needless, however, to pursue this doctrine through the numerous decisions which have been made upon it by the English courts, since their number would tend rather to confuse than to elucidate the subject. Chancellor Kent, in a very able opinion, in the case of Schuyler v. Hoyle and Wife, 5 Johns. Ch. Rep. 196, has referred to most of them, and he thinks the rule may be considered settled, that if the husband sues alone and recovers a judgment, decree, order, &c., the property vests in

him by the recovery, and is so changed as to take away the wife's right of survivorship; but if the suit was in their joint names, the wife, as survivor, should take the benefit of the recovery.—*Ib.* 210. In the case above cited, the husband and wife jointly empowered an agent to receive certain property belonging to the wife, and pay it over to them, in connection with others. The agent received the property, but before payment the husband died. Chancellor Kent said, "The power was executed by the husband and wife *jointly*, and the direction to pay over was a direction to pay to them *jointly* the share of the wife;" and he contends that this does not show that the husband intended to appropriate the property exclusively to himself, so as to cut off the wife's right of survivorship. True, in that case, the agent was empowered to administer as well as to distribute and pay them their shares, but the administration does not change the principle. He was but carrying out the powers conferred upon him while administering, and, as to the parties who gave him the power, was agent, although he acted under authority of law as administrator.

That case, we think, is a correct exposition of the law, and, in its essential features, is not unlike the case before us. Mr. Toombs was the attorney of both husband and wife, to recover this property. He obtained a decree in favor of both, that the property be delivered not to the husband, but to the *husband and wife*. The decree does not in any way alter the title, but expressly leaves it as it was, in husband and wife ; now this being the condition of the property as to title, and the possession remaining precisely as it was before the decree, and the husband having done nothing to change the character either of the title or possession, down to the period of his death, we are unable to perceive upon what principle we could hold that he had reduced the property into his possession as husband, so as to vest in him the exclusive right. If Mr. Toombs had actually taken possession before the death of Col. McNeill, as he would then have held as the attorney for both husband and wife, according to his testimony, it would seem to result from the case last above cited from 5 Johns. Ch. R. that it would not have defeated the wife's right by survivorship; but it is not necessary in this case to go to that extent, for here, as we have said, the attorney did not get the slaves into his possession until several months after the death of the husband.

Confining our decision to the facts of the case before us, we feel constrained, both upon principle and the authority of adjudged cases, to hold that where there is a joint retainer by husband and wife of counsel, to recover the wife's property, and a decree for it in their joint names, if the husband dies before the execution of the decree by the delivery of the property to him or to some person for him who holds as his bailee, the wife is entitled to it as property never reduced into the husband's possession.

The case of Nash v. Nash, 2 Mad. Rep. 133, is a strong authority to show that the arrangement made between Mr. Toombs and the administratrix, Mrs. Arnett, even if the agreement had been made by the express direction of Col. McNeill, would not have the effect of vesting the property exclusively in him. In that case, a father gave to his daughter, a married woman, a check upon his bankers for £10,000; she had presented it, and taken a note for the same payable to herself, which she afterwards delivered to her husband, and who received £1,000 of the principal, and the interest as it accrued, but died before he received the remaining £9,000. It was held, that the remainder survived to the wife.—See also Cro. Eliz. 61; Cro. Car. 77.

In Searing et al. v. Searing, 9 Paige 283, it was held, that where debts are due to the wife at the time of her marriage, they belong to her, in case she survive her husband, although he may have brought a suit for such debts in their joint names, and recovered a judgment therefor, if the money had not been actually collected by him in his life-time.—See also Vaughn v. Wilson, 4 Hen. & Munf. Rep. 453; Clifton v. Exr's of Haige, 4 Dess. Rep. 330.

In regard to our own decisions bearing directly or more remotely upon the main point in this case, we regret to find that, as in the English cases, there is not that harmony which is so desirable upon a question of such importance, and one which so frequently arises. We have looked into them with an anxious wish to reconcile them if we could, and at the hazard of prolonging this opinion beyond what may be desired, we deem it proper briefly to collate them, in order the better to ascertain their bearing upon the case before us.

The first decision in this State which involves the doctrine un-

der discussion, is that of Johnson, adm'r of Ramsey, v. Wren, delivered in 1830, 3 Stew. Rep. 172. That was an action of trover by the administrator of the deceased husband, to recover from the second husband of the widow (Wren) damages for the conversion of slaves alleged to have come to the first husband's possession upon his marriage, as the personal property in possession of his wife. The facts were: James Wardlaw, in 1809, conveyed the slaves, for a valuable consideration, to his sister Jane, who was residing with him as his house-keeper; she hired them to James for ten years; before the expiration of the time, and while Jane was controlling the slaves as house-keeper for her said brother, and in his absence from home, she married Ramsey, his overseer; in a few days afterwards Ramsey died, leaving the slaves as he found them. The widow afterwards married Wren, and brought to him the possession of the slaves, and they removed from South Carolina to Alabama. The question was, whether these facts showed that the plaintiff was entitled to recover. The court held, upon the authority of Wallace *et ux.* v. Taliaferro *et ux.*, 2 Call 437, Schuyler v. Hoyle, *supra*, and the doctrine as laid down by Judges Reeves and Kent, (Reeves' Dom. Rel. Ch. 1; 2 Kent's Com. 115–6,) that he was not; that the first husband " never had the actual or potential possession of the slaves," and consequently no right was transferred to his personal representative to sue for them.

The next year (1831,) the case of Mayfield v. Clifton (2 Stew. 375) came up, in which the facts were: One Thomas Murphy died, leaving a widow and two children, for one of which Mayfield was appointed guardian. The widow administered, and married Clifton, the defendant, and before any settlement of the administration, or distribution of the property of Murphy's estate, she died. Mayfield, the guardian, filed his petition for his ward's share of the estate, and the question was, whether he should have one third or one half of the estate—in other words, whether the third to which Murphy's widow was entitled belonged to Clifton, her second husband. The court held that he had not reduced the property into possession, *as husband,* and that holding it as administrator in right of his wife gave him no title to it after her death; citing the previous case, also 12 Ves. Jr. 497, in which the husband held the wife's property as executor and trustee under a will, making her residuary legatee,

and had disposed of some of it as his own, but the remainder was, notwithstanding such disposition, held to be the wife's after his death; and relying upon Clancy's Rights of Mar. W. p. p. 8, 9, as to the right of survivorship deducible from the parties who may or must unite in the action.

The case of Hogan v. Bell *et al.*, in 1833, 4 S. & Porter 286, affirms the doctrine of the two previous cases, holding " that it is not sufficient that the husband should have held as guardian, executor, or other trustee or agent, but he must have possessed the property, *quasi husband*, for himself and wife." It appeared, however, that pending the coverture, the wife being entitled under a will loaning the slaves to her for life, remainder to the heirs of her body which she might leave, and in case she should leave none such, over to her four brothers and sisters, two of these brothers had released their remainder to the wife, and another had died ; the wife then died without issue, [and it was held that the husband, having held the actual possession under claim of title in right of his wife, was entitled to these interests thus accruing during coverture. It was said "there was no means by which the husband could change the nature of his possession," &c.

Thus stood the decisions until 1839, when the case of Magee v. Toland came up, all the judges who presided in the last mentioned case having gone off the bench. The facts were: On the 1st January, 1835, the slave in controversy was delivered to Magee on a bailment for hire for one year by Hays, as the guardian of Miss Jane Carnathan. In June of that year, Jane married Toland, the plaintiff, and died in August following without issue, Toland never having possession, but Magee holding under the contract of hire, and not otherwise. The question was, whether Magee's possession enured to the benefit of Toland, so as to vest in him the right, as husband, to the exclusion of the wife's next kin, or, in other words, whether the marriage operated upon property thus situated so as to vest it exclusively in the husband. It was held that the possession of the bailee of the guardian was the possession of the ward, and upon her marriage is *eo instanti* transferred to the husband ; and the possession, in point of law, is as much his, as it could afterwards be by actual manucaption. The court does not expressly overrule Johnson v. Wren, but draws the distinction between the two

cases, viz., that in the case cited the wife was the survivor, while in Magee v. Toland the husband survived; and it was said that Mayfield v. Clifton was not opposed to the view then taken by the court, because it was decided on the conflicting claims of a husband and the children of the deceased wife, as to her undivided distributive share in a former husband's estate.

Now, I submit, with all respect for the distinguished learning of the judges who delivered the opinion in Magee v. Toland, whether the *principle upon which that case is made to turn*, namely, *that the possession of Magee not being adverse*, the slave was not a chose in action in his hands, and so the husband's right attached, and was complete by virtue of the marriage, does not directly impinge the doctrine as asserted by the two cases in 3 Stewart. In neither of these cases was the holding adverse, or the property a chose in action, as defined by the court in Magee v. Toland ; and if the effect of the marriage, without more, is to operate a complete and absolute investiture of title in the husband, in all cases where the property is not held adversely, it would seem to follow that the two former cases above referred to were incorrectly decided.

In Bibb v. McKinley *et al.*, 9 Por. 636, the earlier cases were cited with approval, and it was said that property was in possession when a man had both the right and the occupation, but in action when a man had not the possession but the right to possess the thing. In that case, the property sought to be recovered was bequeathed to the wife, with her two brothers, to be equally divided between them by the executors, who were appointed testamentary guardians, and who had taken receipts as guardians, but had acted merely under the will, and the disbursements made had been credited to them in their settlement as executors. The wife died before the property was divided, and while it was in the hands of the executors. Held, that it did not go to the husband. The case of Magee v. Toland was considered as having settled that the possession of the guardian was the possession of the ward, but the possession of the executor was not to be considered the possession of the legatee.

The next case immediately bearing upon the point is that of Pitts v. Curtis, 4 Ala. Rep. 350 ; in which it was decided, that a bequest of a slave to the testator's son, until the slave arrived at the age of 21 years, and the remainder to a married daugh-

ter, vested such an interest in the husband of the daughter, as entitled him to the slave upon the assent of the executor, although the wife died before the termination of the particular estate.

The court say : " It is of no moment that the actual occupancy, or right to the present possession for an ascertained period, was in another. That is nothing more than exists in every bailment ; and no principle is better ascertained than that the possession of the bailee is the possession of the bailor. The rule of law is, that the general property in a chattel draws to it the possession." And it was considered, that as the special property in the plaintiff was consistent with, so it was the possession of the tenant in remainder, who had a general property in the slave. Now, we apprehend, this decision was entirely correct, but it would be difficult to sustain it upon the doctrine on which it is rested by the court. The gift of the vested remainder *was to a married woman*, and it only required the assent of the executor to perfect the husband's title. In such cases, it is not necessary for the husband to reduce it to possession ; for it vests by operation of the bequest and the executor's assent, and the death of the wife does not divest the title out of the husband.—Machen v. Machen, 15 Ala. Rep. 377. But even in such case, if the husband does not reduce the property into possession, and takes no step towards its appropriation or disposition before his death, the wife takes it as survivor.—See Banks v. Marksberry, 3 Litt. Rep. 281 ; 4 *ib.* 356 ; Wilkinson v. Perrin, 7 Mon. 216 ; Comyn's Digest Tit. Baron and Feme E. 3, F. 1 ; Berry v. McAllister's Exrs., Cam. & Nor. Rep. 100. The law does not favor constructive possession so as to defeat the wife's right by survivorship ; and if, in the case of Pitts v. Curtis, the husband, instead of the wife, had died, we think the authorities clearly show that she, and not his administrator, would have been entitled.—Turner v. Davis, 1 B. Mon. 152 ; Brashford v. Buckingham & Wife, Cro. Jac. 77 ; S. C. *ib.* 205 ; Wallace et al. v. Taliafero et al., *supra;* Upshaw v. Upshaw, 2 Hen. & Munf. 381 ; Thomas v. Kennedy, 4 B. Mon. 236 ; Greer's Heirs v. Boone, 5 *ib.* 556 ; Ring et al. v. Baldruge, 7 *ib.* 585.—See also Smith v. Scudder, 11 Serg. & Rawle 325 ; Bohn v. Headly, 7 Har. & John. 257 ; Dade v. Alexander, 1 Wash. 30 ; Gregory v. Marks, 1 Ran-

dolph 555 ; 2 Bacon's Abr. (Bouvier's Ed.) 23 ; Whitaker v. Whitaker, 1 Dev. 310 ; *ib.* 456 ; Blount v. Bestland, 5 Ves. Jr. 515 ; 9 *ib.* 174 ; 4 *ib.* 751 ; Hernsley. v. Lee, 2 Madd. 16, re-examined and affirmed ; see 1 Roper's Husband and Wife, 238, and appendix to vol. 2nd. We notice the case of Pitts v. Curtis more particularly, because the dictum of the learned judge, which declares that, "upon the death of the husband before his wife, the property would have gone to his representatives," may mislead, as we think it is opposed to the current of authorities applicable to such cases, and is certainly in opposition to the leading case in this State, namely Johnson v Wren, 3 Stew.

The case of Woodly v. Findley *et al.*, 9 Ala. Rep. 720-1, shows, that when the wife's chose in action accrues during the coverture, the husband may exercise an election whether or not he will join his wife with him in an action to recover it. And in Andrews & Bros. v. Jones, 10 Ala. Rep. 442, it was said, if the suit be brought in their joint names, and the husband and wife recover judgment accordingly, for a debt due to the latter before marriage, and the husband dies before it is collected, the right survives to the wife ; citing 9 Paige 200, and 2 Bail. Rep. 477. Mr. Roper (vol. 1 p. 216,) says : "Decrees so far resemble judgments at law in this respect, that until the money be ordered to be paid, or declared to belong *to the husband*, the wife's right will remain undisturbed ; and as a joint judgment will survive to the wife, if her husband die before execution is awarded, so will a joint decree, until an order be obtained for payment, or declaring the money to belong *to the husband*."

In Terrell *et al.* v. Greene *et al.*, 11 Ala. Rep. 207, a deed was made of slaves to a husband, in trust for his wife and children ; the husband took possession, and died ; but as he held as trustee, and not as husband, it was considered his marital rights never attached. The case of McDaniel v. Whitman, 16 Ala. Rep. 343, and which is based upon the decision in Magee v. Toland, *supra*, holds, that money in the hands of a guardian, belonging to a female ward who marries and dies, belongs to the surviving husband, upon the doctrine that the possession of the guardian is the possession of the ward; and her possession is that of her husband; so his marital right attached, and his title was not defeated by her death. Nevertheless, had the husband died before the wife, it

is said, the demand would have survived to her, and that he cannot recover a judgment for it upon a settlement in the Orphans Court, while she is living, in his own name, but only in the name of himself and wife.—Crenshaw, guardian &c., v. Hardy, 3 Ala. Rep. 653; Hudson, guar., v. Parker, 9 *ib.* 413.

The case of Chambers *et al.* v. Perry, 17 Ala. Rep. 729, 730, is a greater extension of the principle asserted by Magee v. Toland, than was made in McDaniel v. Whitman, *supra.* In this case also, the husband was the survivor, and the wife had property, in which three others were jointly interested, in the hands of her guardian, appointed by a decree of the Chancery Court, and which decree provided that the female ward and her husband, should she marry before she arrived at the age of 21 years, might apply to the register of said court to have distribution made, who should appoint five discreet freeholders, to make the allotment. His application was made, and the commissioners were appointed, who proceeded to designate the slaves designed for the applicants, but before the confirmation of their report, the wife died. Held, that the husband's right to the property was complete, the possession of the guardian being the possession of the ward. But we apprehend that it could not successfully be maintained, that, had the *wife* survived, the action which she and her husband had taken with reference to the property would have defeated her right. If so, the cases of Crenshaw v. Hardy and Hudson v. Parker were incorrectly ruled.

The same doctrine of constructive possession again came up in Hopper, adm'r, v. McWhorter, 18 Ala. Rep. 229, in which there was a gift of slaves to four infant children to be equally divided between them, and the slaves were left by the donor with the mother of the children, who retained them for 15 years, and then made a division by the consent of the donees. Before the division, one of the children married, and her husband had died, and she had married a second husband, who received his wife's share of the negroes, to recover which this suit was brought by the first husband's administrator. It was held that the first husband's right was complete, and his administrator entitled. This decision goes beyond any which this court had made in depriving the wife of her right to property, over which the husband had exercised no control or dominion, and which he had never had in actual possession, or claimed in any way, so far as the

proof disclosed. Although it received my sanction, more mature reflection and thorough investigation have satisfied me that it was incorrectly decided.

It will be manifest from this examination of our own decisions, that none of them, when applied to the facts of the case before us, sustains the claim of the husband's executors. The slaves were choses in action; the title to them was in dispute, and a suit was necessary to settle the conflicting rights of the parties. This suit was brought, and a decree rendered in favor of husband and wife, but the subject matter of the recovery had not been reduced to possession. Suppose the administratrix, Mrs. Arnett, finding that Col. McNeill was dead, and that there was a conflict between his widow and executors, as to which of them should take the property, had filed her petition in the cause, setting forth these facts, is it not very clear that the court of equity in Georgia would have given the property to the surviving wife? We think it quite clear from the principles asserted by the Supreme Court of that State in Bell *et al.* v. Bell, 1 Kelly's Rep. 637, that it would. We apprehend, also, that while the decree remained unexecuted, and the property in the hands of the bailees either of Mrs. Arnett, or the court, the wife, upon an application in the nature of review, might have asserted her equity. This only serves to show that the husband's right was not absolute, and that the wife's interest was not divested by the operation of the decree, as the court still retained the power over the cause to direct that the decree should be executed in favor of the surviving wife.

It results from what we have said, that the charge of the court was erroneous; the judgment must, therefore, be reversed, and the cause remanded.