HAIR, ADM'R, &C., ET AL., *vs.* AVERY ET AL.

[BILL IN EQUITY FOR DIVISION AND ACCOUNT OF SLAVES, BY CHILDREN CLAIMING UNDER WILL OF MATERNAL GRANDFATHER, AGAINST PURCHASER AT EXECUTION SALE AGAINST THEIR FATHER.]

1. *As to misjoinder of complainants, and waiver of rights by joining in bill.*—Where an administrator and the surviving sister of his intestate, as tenants in common, join in a bill for the recovery of slaves bequeathed by the maternal grandfather of the sisters to their mother and her children, and sold under execution against their father, the surviving sister thereby waives her right of survivorship, if any she had ; and the defendant cannot raise the objection, that the will created a joint tenancy, and that therefore there was a misjoinder of complainants.
2. *Wife's right of survivorship.*—The husband's marital rights do not attach, so as to defeat the wife's right of survivorship, to property which is in the actual and rightful possession of another, and of which he cannot obtain possession during the coverture without becoming a trespasser.

APPEAL from the Chancery Court of Greene.

Heard before the Hon. JAMES B. CLARK.

This bill was filed by James Hair, as administrator of Mildred Walker, deceased, and Etherlin T. Croxton, against Bryant Avery and Pinckney Jones, and alleged the following facts : That John Hill, the maternal grandfather of said Mildred and Etherlin, died, in 1821, in King William county, Virginia, after having made and published his last will and testament, which was duly admitted to probate after his death, and which contained the following residuary clause : "And, lastly, my desire is, that all the residue of my property, except a woman named Patty, be equally divided, after the

payment of all my just debts, between my son Robert, my daughter Polly's children, my *daughter Mildred and children*, and my daughter Sarah."

The bill further alleged, that the said Mildred, named in said will, was the wife of one Baylor Walker, and the mother of said Mildred Walker and Etherlin T. Croxton, who were her only children living at the death of said John Hill; that the residue of said Hill's estate, after the payment of all his debts and specific and general legacies, consisted of a large number of valuable family slaves, which were shortly afterwards divided among the residuary legatees according to the provisions of the will; "that said Baylor Walker received, and took into his possession, the share or portion which was allotted and coming to said Mildred and her children; that this share consisted in part of several valuable family slaves, which remained in the possession of said Baylor, in Virginia, until about the year 1837, when he removed to the county of Sumter, in this State, bringing said slaves with him"; that said Baylor Walker, soon after removing to this State, became involved in debt, and judgments were rendered against him; that executions were issued on these judgments, and levied on some of the said slaves, whose names are specified; that these slaves were sold under said executions, and were purchased by the defendant Bryant Avery, who has since conveyed one or more of them to his co-defendant, Jones.

The bill also alleged, that said Mildred and Etherlin were infants at the time their father removed with said negroes from the State of Virginia; that said Etherlin intermarried with Croxton in 1838, in Virginia, and continued to reside there with him until his death, which occurred in 1848; "that said Croxton never made any effort to recover said slaves, and never reduced the interest of said Etherlin into possession"; that said Mildred has departed this life, and said Hair has been appointed her administratrix; that Baylor Walker died in 1844, and his estate being wholly insolvent, no administration has ever been had upon it; "and complainants now charge and aver, that the rights of the said Mildred and Etherlin, who were the only children of said Milly Walker, attached to the said slaves, and became vested in

them as such children, jointly and equally with their said mother, at the death of the said John Hill, and that they are still entitled to recover their proportionate part of said slaves, their increase and hire." The prayer of the bill is, "that an account may be taken of the value, increase, and hire of said slaves; and that said slaves, with their increase and hire, may be divided upon such just, fair, and equitable terms as may seem right and proper."

The chancellor dismissed the bill for want of equity, but without prejudice to the right to file another; and his decree is now assigned for error.

TURNER REAVIS, for the appellants, made these points :

1. The bequest to Mrs. Walker and her children created a tenancy in common, and not a joint tenancy.—2 Bla. Com. 320; Amb. 656; 2 Atk. 122; 3 Vesey, 628. The averment in the bill, that Etherlin and Mildred were "jointly and equally" interested in the bequest with their mother, is to be construed in reference to the will, which is made an exhibit, and cannot amount to an allegation of a joint tenancy, unless the will creates that estate. If, then, the children of Mrs. Walker took an estate in common with her, there was no right of survivorship, and, consequently, no misjoinder of complainants; for tenants in common may join, or the personal representative of the deceased may join with the survivor.—Story's Equity Pleadings, §§ 159, 358, 622, 830; Patton v. Crow, 26 Ala. 426.

2. But, if the bequest created a joint tenancy, the statute of Virginia, in which State the will was made, converts joint tenancies into tenancies in common.—Revised Code of 1819, 359, § 2; Revised Code of 1849, 502, § 18; 1 Tucker's Com. 173. It is true this court has repeatedly held, that the common law will be presumed to prevail in other States of the Union, until the contrary is shown. Can it not be shown in this court, in the first instance, by the production of the properly authenticated statutes? It seems to have been done in a case reported in 2 Stew. & P. 91, and to be allowed by the statute (Clay's Digest, p. 341, §§ 154, 159; Code, §§ 2293, 2296); and such is the practice of some other courts. 12 Vermont, 396; 3 Barb. 20; 2 McLean, 579, 168; 9 Peters,

607. Will the court presume a fact which every body knows to be false? Will it presume that the common law prevails in Louisiana, when the public history of the country proves that it does not? Is not the court bound to take notice of the public history of the country? and is not a general public statute of another State, especially when it changes a long established rule of the common law, a matter of public history?

3. But, if the bequest creates a joint tenancy, and the common law is presumed to prevail in Virginia; still the bill shows that the joint tenancy was destroyed, and converted into an estate in common. There being nothing in the bequest to prevent the marital rights of Baylor Walker from attaching to his wife's interest in the slaves, he became a joint tenant with his two daughters, so soon as he received the slaves into his possession.—2 Ala. 152. The subsequent sale of the slaves, under execution against him, and the delivery of possession to the purchaser, dissolved the joint tenancy, and converted it into a tenancy in common; for there can be no unity of possession, where there is an adverse holding.—2 Bla. Com. 151; Thompson v. Mawhinney, 17 Ala. 368–9.

4. If, however, the joint tenancy was not thus severed, it was severed by the statute of this State, on the death of Mildred.—Clay's Digest, 169, § 6. This statute is a law of distribution, and distribution is made according to the law of the intestate's domicile. The bill shows that Baylor Walker had been a resident of Alabama for five years, when the slaves were sold under execution against him, and therefore had his domicile here; and Mildred being an infant, her father's domicile became hers.—Story on Conflict of Laws, §§ 46, 376, 481 a; Phillimore on Domicile, 31, 35, 39; 2 Kent's Com. 226, note c; Potinger v. Wightman, 3 Mer. 67; 5 Pick. 20; 10 Ala. 946.

So then, whether the will creates a tenancy in common or a joint tenancy, the administrator of Mildred properly joined in the bill with Etherlin.

5. If, however, there is a misjoinder of complainants, and either shows a title to relief, the bill should not have been dismissed, but leave should have been granted to amend.—

Story's Equity Pleadings, § 541, note 4, and § 544, note 3; Clay's Digest, 351, § 37; 24 Ala. 149; 10 *ib.* 702; and cases cited in Reavis' Digest, 299, § 929.

ORMOND & NICOLSON, and E. W. PECK, *contra:*

1. The bequest to " Mildred and children" created a joint tenancy in Mrs. Walker and her two daughters, at common law; and the court will presume, in the absence of an averment to the contrary, that the common law prevails in Virginia, where the bequest was made. The sale of the slaves, under execution against Baylor Walker, did not destroy the joint tenancy so far as Mildred and Etherlin were concerned. 2 Bla. Com. 186; 2 Ad. & El. 75; 5 Nev. & M. 372.

2. The bill shows no title in Hair, for it does not allege that his intestate died in Sumter county, nor that the property was there when his letters were granted.—Clay's Digest, 301, § 22; 1 Dan. Ch. Pr. 360; Story's Equity Pleadings, § 23. As the bill nowhere alleges that said intestate ever came to this State, the question of domicile does not arise.

3. The marital rights of Croxton attached to his wife's interest in the slaves, and therefore complainant Etherlin shows no title to recover.—Magee v. Toland, 8 Porter, 36.

4. There was a complete remedy at law.

5. The bill was properly dismissed for the misjoinder.— Story's Eq. Pleadings, § 232; 4 English Ch. 225; 22 Ala. 655.

CHILTON, C. J.—When this case was first argued, I felt satisfied that there was a misjoinder of parties complainant, in this, that the administrator of Mildred, who was dead, was joined with Etherlin, the survivor; and that this misjoinder was fatal to the complainants' case. I have subsequently looked more carefully into the authorities, and upon more mature reflection, I am satisfied that my first impressions were erroneous.

The argument to sustain the demurrer for misjoinder, is based upon the idea, that the will of the testator, bequeathing the property to his daughter Mildred and her two children, Mildred and Etherlin, created in the three a joint tenancy by the common law, to which the right of survivorship attached; and, since the will was made and took effect in the State of

Virginia, and no statute of that State was alleged, changing the common law, the latter must be regarded by us as of force, and the will should be construed accordingly. Hence it is urged that, upon the death of Mildred, her mother's interest having been separated by a sale of the property under execution against her husband, the interest of Mildred survived to Etherlin, and therefore, the administrator of Mildred had no interest and was improperly joined as complainant with Etherlin.

The complainants make their title to the slaves through a bequest of Mr. Hill, their maternal grandfather. Whether the language of the will creates a *joint* interest in the property, or the parties hold as tenants in common, is matter of construction. In the settlement of this question, the defendants have a right to have all the parties before the court, who are interested in its decision. It is very clear, then, that Hair, the administrator of Mildred, the younger, might properly have been made a party defendant, conceding that it should turn out the right of survivorship existed in Etherlin. But he is made a co-complainant; and the bill proceeds upon the allegation, that each of the complainants has an equal share in the property secured to them by the bequest. Does it lie in the mouth of the defendants to say, ' no, it is a mistake; the property, upon a proper construction of the language of the bequest, upon the death of Mildred, survived to Etherlin, and she alone is entitled to sue for and recover it' ? What interest have the defendants in the question, whether the right of survivorship obtains or not ? None whatever. So that they are protected, and the record is made to furnish a complete estoppel as to all parties in interest, against any subsequent effort to make the defendants liable upon the same title, it is all they have a right to demand.

The demurrer concedes the truth of the facts stated in the bill. The complainants allege that they are "jointly and equally interested" in the property sued for,—that such is the effect of the bequest upon which they rely for title. Whether this be true or not, depends upon the law existing at the time the bequest took effect in Virginia. The foreign law is matter of proof. *Non constat*, they may show a statute of Virginia abolishing the right of survivorship as an

incident to joint tenancies.   But, be this as it may, Etherlin, by uniting with Mildred's administrator in a bill to recover each their one-third interest in the property, waives her claim by right of survivorship, if she have any, and concedes to her sister's estate an equal participation in the property; thus effectually barring and estopping herself from ever after demanding the interest which the bill claims for the estate of Mildred.   We are of opinion, therefore, that there is not a misjoinder of complainants in this aspect of the case; at least in such sense as to be fatal to the bill.—See, as to plaintiffs' right of waiver, Story's Eq. Pl. § 224; and upon the insufficiency of the objection to defeat the bill, Rhodes v. Warburton, 6 Sim. Rep. 617; Story's Eq. Pl., note 1 to § 510, p. 542, ed. 1852; Aylwin v. Bray, 2 Younge & Jer. 518, note; Story's Eq. Pl. § 544, note 2; ib. p. 573, n. 1, and cases there cited. See, also, 2 Younge & Jer. 520; 1 Keen's R. 601-619; 2 Younge & Coll. 132; Edwards on Parties, p. 8, and cases cited by this author.

2. Another objection is taken, that Croxton's administrator is the proper party to recover the interest which vested in Etherlin, his wife.   But this cannot be maintained.   He never reduced the property into possession as husband.   It had never been divided, so as to separate the share which belonged to his wife; and being in the actual possession of another, not as a mere *depositum*,—not held by him as the simple bailee of Croxton, his marital rights never attached; and the wife, surviving him, is entitled to recover.   We had occasion to examine this question somewhat in Mason and Wife v. McNeil's Executors, 23 Ala. Rep. 201, and need not here repeat what we there said.   A mere constructive possession, such as the law draws to the title, will not suffice to vest a complete title in the husband, where it is in the actual and rightful possession of another.—27 Ala. Rep. 129-130; 23 ib. 201, and cases cited.   Mr. Bell, in his work on Husband and Wife, pages 49-50, says, " Marriage is *an absolute* gift of all personal estate, which is either *actually* in the possession of the wife at the time of the celebration of the marriage, or which comes into *actual* possession during the continuance of the coverture."   Mr. Bright limits the husband's marital rights to such personal estate as the wife was

"*actually* and beneficially possessed of at the time of the marriage, in her own right, and such as come to her during the marriage,"—Bright's Hus. and Wife, vol. 1, p. 34. See; also, Coke's Lit. 351.

I think it may safely be asserted as a correct rule, that the husband's marital right does not attach, so as to defeat the wife's right by survivorship, to property so situated that neither the husband nor wife has actual possession, and of which they could not obtain possession during the coverture, without becoming trespassers. In other words, where the actual possession, and the right to such possession, are in another, and so remains during the coverture, the property survives to the wife.—See Williams on Pers. Property, pp. 7, 21, 25, 26.

It results from what we have said, that the decree of the chancellor dismissing the bill was erroneous. Let it be reversed, and the cause be remanded for further proceedings.

