MARY C. WALLACE v. NATHANIEL BURDEN.

Where it is admitted or proved that the Common Law was in force at the time, in the State where the transactions on which the rights of the parties depend, occurred, the Court will take notice what the Common Law upon the subject is.

At Common Law, where a wife has a clear legal estate in a personal chattel, and the right to immediate possession in severalty, which is not disputed by the person who has the actual possession, the marital rights of the husband would attach, and no act is necessary to complete his title.

Appeal from Williamson. Tried below before the Hon. Thomas H. DuVal.

The plaintiff based her title upon the gift from her father, and proved her marriage in Tennessee in 1829, and the death of her husband in 1853, in order to avoid the defendant's plea of the Statute of Limitations, it being admitted that the latter had adverse possession of the slave since 1851 ; this suit having been commenced May 30th, 1854. The only evidence intro-duced by defendant was a bill of sale of the slave from two

persons by the name of Doss, brothers of the plaintiff, to him, dated in 1851, and the admission of adverse possession as aforesaid. The evidence is fully stated in the Opinion. It did not appear when the father died, nor when the plaintiff and her husband removed to Texas. Nor did it appear where it was that the witness said he saw Milly in the possession of plaintiff about a year after the death of her father. There was no evidence of any will. There was no evidence as to who brought Milly to Texas. The case of the plaintiff was prepared and proved upon the theory that she was entitled to recover, if she established the gift and her subsequent coverture during adverse possession.

*Sneed* and *Turner*, for appellant.

*Fisk & Bowers*, for appellee.

HEMPHILL, CH. J. The plaintiff claims Esther, the slave in controversy, by virtue of a gift or sale to herself by her father, Parker S. Doss, of Milly, the mother of said slave. The instrument of gift or sale was executed in 1821 or 1822. The plaintiff lived with her father until 1829, when, at the age of twenty-two years, she intermarried with Willis S. Wallace, who departed this life in 1853, some months before the commencement of this suit. The woman Milly remained in the possession of the father subsequent to the gift, and was left in his possession after the marriage of the plaintiff, though for what reason she was so left is not known to the witnesses ; one of them says that the father had several slaves, and had no need of the services of the girl Milly ; that he knows no reason why she should have been left, unless that Mr. Wallace had several servants of his own, and had no need of her services ; that the father acknowledged the claim of the plaintiff to the girl Milly ; what became of her during the twenty-five years which intervened between the marriage of plaintiff and

the inception of this suit, does not distinctly appear, except that the last time he saw Milly she was in the possession of the plaintiff, after the death of her father about one year, by will. From this it appears that the plaintiff was at one time holding Milly under the will of her father ; but when this was, is not shown. This is not intended as a full statement of the facts of the case, but a reference to such only as will suffice to render the points in the Opinion intelligible.

If it be admitted that the fact of the gift in 1821 or 1822 was established by sufficient or competent proof, it must follow, from the evidence, that the plaintiff went into possession and control of the woman Milly on her (the plaintiff's) arriving at age ; and if so, on her marriage a year afterwards, the property, by the Common Law, (admitted to be in force in Tennessee, the place of the marriage,) vested immediately and absolutely in her husband. (2 Kent, Com. 143 ; Coke Litt. 351, b.; 27 Ala. 117, 118 ; Bright, Hus. and Wife 34 ; 6 Humphreys ; Bacon's Abridgment, 479.)

It may be admitted that during the minority of the plaintiff, the possession was with her father as her natural guardian. But even then, it seems that he refused to hire the woman, without the consent of his daughter. This might happen in some cases, out of mere indulgence in a parent, to gratify the whim or caprice of a child, with the idea of property of its own, without intention of a gift ; but the act of the parent, under the circumstances of this case, cannot but be considered as an acknowledgment of right in the plaintiff. Admitting, then, his possession as guardian during her minority, his control and possession would cease on her arriving at age. There is nothing in the proof to show that she did not control the slave at the time of her marriage, or that she might not have exercised such control at her pleasure. The father, according to the evidence, admitted Milly to be the property of the plaintiff. There is nothing to show that the father, at the time of the plaintiff's marriage, had any such actual possession,

under legal right, say for instance by hiring from the daughter for the year, as would have prevented the husband from taking immediate, actual and absolute possession. Even if there had been any such obstacle to immediate, actual possession, yet such impediment could not be presumed to have continued for twenty-four years, or during the life of the husband.

The plaintiff contends that her husband never did reduce Milly into possession, and that she is entitled to her, and, consequently, to Esther, her daughter, by survivorship. We do not intend any elaborate investigation of the Common Law doctrine of the right of the wife by survivorship. The law on this subject is foreign—is not and never was recognized as of force in this State, and it is not necessary to trace it further than to ascertain the correct rule for the decision of the immediate cause. We will refer to some cases, and we believe it will appear that where the wife has the right of immediate, absolute possession, the property vests in the husband.

In Sausey v. Gardner, 2 Hill, South Ca. 192, a negro child, named Phillis, was allotted to the wife in the distribution of her father's estate. The wife and husband were present at the division, and the husband declined taking the child from her mother on account of her tender years, but left her with the executor : Held that if the possession of the executor, after partition, was for the wife, then it was her possession, consequently her husband's, and his marital rights would attach. She had a clear legal estate, and a right to immediate possession in severalty, and no act on the part of the husband was necessary to complete his title. It was also held that the husband having the legal possession, and declining to take the child, and leaving it with the executor, constituted the latter his agent, and his actual possession was that of the husband. The Court referred to Davis v. Rhame, 1 McCord, Chan. R., 195, in which on actual partition, and negroes allotted to a minor and placed in possession of her guardian, it was held that the possession of the guardian was that of the minor, and con-

sequently that of her after taken husband. (See also 2 Nott and McCord, 151, note a ; 1 Hill, S. Ca. Chan. Rep. 397.)

The right of the wife, by survivorship, has been discussed in numerous cases in English and American Courts, and there appears to be considerable diversity of opinion. As a proof of this diversity, I will refer to Mason v. McNeill's Executor, 23 Ala. 201, in which it was held that where counsel are retained by husband and wife jointly to sue for and recover the wife's property, and a decree therefor is rendered in their joint names, if the husband dies before the execution of the decree by a delivery of the property to him, or to some person who holds for him, as bailee, the wife is entitled to it as property never reduced into the husband's possession. In this case the English and some of the American authorities were reviewed, and other cases in the Supreme Court of Alabama were particularly scrutinized, and it was shown that there had been much conflict of opinion on the question of the wife's right by survivorship. This was no doubt intended as an authoritative decision on the point, but in Gibson v. Land, 27 Alabama 117, it was announced by one of the Judges that he did not consider himself committed by the reasoning or decision in the case above cited, viz : Mason v. McNeill, 23 Ala. 201. (See 4 Iredell, Eq. 76—385 ; 1 Kelly, 367 ; 1 Ashmead, 323 ; 2 Ashmead, 455 ; 2 Richardson, Equity ; 5 Johns. Chan. Rep. 197.)

Amidst the great diversity of opinion, it is believed that in no case has a doctrine in opposition to the principle announced in Sausey v. Gardner, 1 Hill, So. Ca. 192, been maintained, viz : That where a wife has a clear legal estate in a personal chattel and the right to immediate possession in severalty, the marital rights of the husband would attach, and no act is necessary to complete his title.

On the proof in this case, the plaintiff, at her marriage, had the clear legal estate in Milly. She had a right to immediate

possession in severalty.   This was disputed by none, and the right of her husband consequently attached.

If he left the girl with the father of the plaintiff, it was an exercise of right which could not be resisted by the wife, as the marriage. *ipso facto*, transferred the property to the husband.

The property having vested in the husband, the wife cannot claim it in her separate right by survivorship, and there is therefore no error in the judgment for the defendant.

Other views might be taken of this case. which would be equally fatal to the claim of the plaintiff.

The demand is stale, and, unless on very clear right, should not be sustained, and suffered, after twenty-five years, to disturb third possessors, who would not probably have any knowledge of private family arrangements in relation to the right in Milly, the mother of the slave in suit.

Judgment affirmed.