## SAUNDERS *vs.* SAUNDERS' ADM'R.

1. In the construction of marriage contracts, the question whether the wife, on the death of the husband, takes an absolute estate in the property brought by her into the marriage, is entirely one of intention, to be collected from the general frame of the instrument; and such intention will prevail, although contrary to the express words of a particular clause.

2. A marriage contract was executed between S. and his intended wife, M., which provided that each party should retain the exclusive interest in all property, of whatever kind, owned by him or her respectively, at the time of the marriage, or afterwards acquired by purchase, gift, devise, bequest, or descent, and disclaim all interest in the property of the other. The instrument also contained the following clauses, viz.: "And it is here fully and expressly intended to be understood, and so agreed, covenanted, and sanctioned, that nothing is intended by this instrument, or other contract or understanding, to deprive either the said S. or M. from all and every right to have, hold and enjoy all the provisions, benefits, &c., of the law, as now, or may be hereafter provided or enacted, governing estates, after the death of either of the said parties; that the full intent and meaning of this instrument is, that, at the death of either said S. or M., this instrument, with all its meaning, shall cease to be of any effect, and of no avail, void and dead, and the surviving party enjoy all the privileges, rights, and immunities, as though

no contract ever existed, or written instrument had between them, and nothing is intended to prevent the law from the control, management, &c., as though no contract did ever exist; and nothing shall be so construed as to prevent the subscribing parties from mutually enjoying the goods, chattels, or effects of any kind, in the usual common comforts and necessities of life, or for the peace, happiness, prosperity and advancement of the parties and their families. In witness whereof, and intending this instrument, with all its meaning, to cease to be of any effect, to be void, cancelled, annihilated, and forever cease to be of any meaning, and of no effect. at the death of either of the parties, the parties have hereunto set their hands," &c. *It was held,*

That the wife, upon the death of the husband, took an absolute estate in the property brought by her into the marriage.

3. Where a marriage contract is executed, by which the wife, on the death of the husband, takes an absolute estate in the property brought by her into the marriage, she cannot come into equity, on the death of her husband, to have the contract established, and to enjoin her husband's administrator from proceeding at law against her for a recovery of the property. The contract, being a final and complete act, presents simply a question of construction, for the determination of which a court of law is equally as competent as a court of chancery.

ERROR to the Chancery Court of Mobile.

Tried before the Hon. J. W. Lesesne.

Thomas Saunders and Mary D. Moniac made a marriage contract, which, after reciting the intention of the parties to intermarry, provides: "Each of the before named parties, to wit, Thomas Saunders and Mary D. Moniac, having and owning property, at the date of their marriage, and all that shall hereafter belong to them, by heirship, legacy, or gift, from any relation or friend, either living or deceased, the right to convey and make title to the same shall be and remain with the said Thomas Saunders, for all now owned, or hereafter purchased, or received by legacy, &c.; and the property now owned by the said Mary D. Moniac, or that may hereafter fall to her by division or heirship, legacy, &c., the right to convey and make good and sufficient title to the same, shall be and remain with her; and it is fully intended by the parties, that no contract, covenant, or agreement, heretofore made, or hereafter made, shall hold the goods, chattels, lands, tenements, negroes, or any other species of property or effects, liable to discharge any other debt or liability, than such contracts made pursuant to this instrument, and pursuant to the intent and meaning of the same; and it is by this contract,

and intended to be so expressed, that each of the parties before named disclaim all right to sell, use, or convey the goods, chattels, lands, negroes, horses, mules, cattle, or stock, of any kind, owned at the date of this instrument, or that either of the parties may hereafter be entitled to, by legacy, gift, or heirship, from any relative or friend, either dead or living, without the written permission of the before named Mary D. Moniac; provided, always, that the said Saunders reserves and retains the right to contract, buy and sell, sue and be sued, and transact all manner of business, agreeably to his own instruction and judgment, upon the faith and credit of his own merit and property, owned by himself and hereafter purchased or gotten into peaceable possession, not including any kind of property now owned by Mrs. Moniac, or that she may hereafter be entitled to, from the estate of her deceased husband, or any other friend or relative, by deed, gift, or otherwise; and it is further understood, that nothing in this instrument is intended to deprive the said Thomas Saunders the doing and performing all acts and things, transact all kinds of business pertaining to the avocation of life, intended for the advancement, prosperity, &c., of the subscribing parties and families; and it is here fully and expressly intended to be understood, and so agreed, covenanted, and sanctioned between the said Thomas Saunders and Mary D. Moniac, that nothing is intended by this instrument, or other contract or understanding, to deprive the said Thomas Saunders or Mary D. Moniac from all and every right to have, hold, and enjoy, all the provisions, benefits, &c., of the law, as now or may be hereafter provided or enacted, governing estates, after the death of either of the before named parties, and that the full intent and meaning of this contract and instrument is, that at the death of either Thomas Saunders or his intended wife, Mary D. Moniac, this instrument, with all its meaning, shall cease to be of any effect, and of no avail, void and dead, and the surviving party enjoy all the privileges and immunities, as though no contract ever existed, or written instrument had between them; and nothing is intended to prevent the law from the control, management, &c., as though no contract did ever exist; and nothing shall be so construed as to prevent the subscribing parties from mutu-

ally enjoying the goods, chattels, or effects of any kind, in the usual comforts and necessities of life, or for the peace, happiness, prosperity and advancement of the parties and their families. Mrs. Margaret Tate is by the parties appointed a trustee, with full power and authority to act as such. In witness whereof, and intending this instrument, with all its meaning, to cease to be of any effect, to be void, cancelled, annihilated, and forever cease to be of any meaning and of no effect, at the death of either of the parties, we have hereunto set our hands and seals," &c.

The marriage was celebrated, and Saunders died, leaving his wife surviving. The administrator of the husband commenced an action of detinue against Mrs. Saunders, to recover certain slaves, and she filed her bill in the Chancery Court, setting forth the settlement, alleging that the slaves sued for were her property at the time of her marriage with Saunders, and praying that the settlement might be established, and the administrator enjoined from the prosecution of the suit.

From the evidence it appeared, that the negroes sued for were the property of Mrs. Saunders before the marriage, and that the estate of Thomas L. Saunders was insolvent. A decree was rendered, dismissing the bill, which was brought by writ of error to this court, and the rendition of the decree is here assigned for error.

CAMPBELL and P. WALKER, for plaintiff in error:

In the construction of marriage agreements, the intention must be given, and to ascertain that intention, regard must be had to the nature of the instrument itself, the condition of the parties executing, and the objects they had in view. 19 Ala. Rep. 146; Atherley on Marriage Settlements, 105; 1 S. & M. Ch. R., 355; 3 H. & M. 399.

To carry out that intention, courts of equity will disregard technical rules. 2 Iredell Ch. R. 241-3.

In order to give effect to the intention of the parties, a court of equity will reform a settlement, though made in the very words of the articles, if the legal effect of the words is not according to that intention. 1 McMullen's Eq. 358; 1 Hill's Ch. Rep. 101-3; 2 ib. 1, 3, 4-5; Atherley, 121-2.

Where, by mistake, the wife's property was made to appear to be the husband's, it was held that the settlement might be corrected, so as, conformably with the intention of the parties, to provide against the husband's bankruptcy or insolvency; and this, although the settlement was *complete* and not *executory*. Macqueen on Husband & Wife, Part 2, 270; Atherley, 153–8; 17 Ala. 557, 561–2–3; 1 ib. 161.

The language of the agreement in this case is sufficient to create a separate estate in the plaintiff in error. 1 White's Eq. Cases, 366–7; 376–377, note to case of Hulme v. Tenant; Macqueen, Part 2. 307–8, and cases there cited; 9 Paige, 364; 12 Ala. Rep. 29, 31–2.

Under the agreement, the wife will be regarded as a *feme sole*, and as always having retained the *jus disponendi*. 20 Conn. Rep. 173–4–5–6–7.

If the trustee named in the instrument had taken upon herself the execution of the trust, is it not clear, that her husband and those claiming under him would have been barred from all rights in the property? Is not this equally true where a trustee is dispensed with, or never assumes the trust?

It is not contended here by the defendant in error, that Thomas Saunders, in his life-time, had any rights over the property of his wife, as against her; and yet it is urged, that upon his death, all the limitations and restrictions contained in the agreement, and which were designed to protect and secure the property of the wife against his debts, are swept away, and that his decease confers upon his administrator, rights which were denied to himself.

Such a result is not sanctioned by correct legal reasoning, nor can it be fairly deduced from the marriage articles, that such was the intention of the parties.

It cannot be denied, that it was the purpose of the parties to protect the wife's property against the marital rights of the husband, and against liability for his debts, and yet the claim by his administrator is founded upon the idea, that the wife simply desired to limit this exemption to her husband's death; and upon the happening of that event, her separate estate was to be yielded up for their liquidation.

This idea is at war with the conclusions we must necessarily form, as to the motives inducing her to enter into the agreement.

The instrument, by express language, exempts the property from all liability for his debts or contracts. He surrenders all power of alienation, by stipulating that no part of the property should be disposed of without the *written permission* of the wife. It is a strange perversion of the meaning of the parties, to suppose, that they designed that the death of the one or the other should bring into being *marital* rights which had no previous existence under the agreement, and against which every guard was taken. 1 S. & M.'s Ch. Rep. 355, 362-3-4-5.

Under the articles, the husband had no right, and as the administrator claims under him, he can take nothing. The principle of a *specific* performance will shelter the plaintiff in error from interference by the administrator, she having fully executed her part of the agreement. The interference of the administrator is a wrong which a court of equity will not permit. It is insisted on by the plaintiff in error, that the estate is, by the language of the articles, secured to her, and therefore comes under the rule that an estate limited to the wife, does not, after the death of the husband, go to his administrator, but is retained to herself. 5 Iredell Eq. 111; 7 Johnson Ch. R. 229; 19 Ala. 146; 4 Watts & Serg. 546.

JOHN T. TAYLOR, *contra:*

1. The marriage contract cannot be considered in the light of "marriage articles." The bill itself does not claim this character for it; and the contract itself is a complete legal instrument, and could be used at law as such. The parties did not contemplate any further action to complete it; therefore there is no necessity for the aid of a court of chancery to carry it into effect. Atherley on Mar. Settlements, 123; ib. 117-91; 2 Cases in Chan. 17.

2. The bill it not properly drawn to warrant a reformation of the contract. It does not allege or even admit that there was any fraud or mistake in drawing it, but insists that it gives her what she seeks, on its face. The whole object of the bill seems to be, to get from the court a construction of the instrument, and the court of law is as competent for this as the court of chancery. Not having alleged fraud or mistake, they would not be allowed to prove it; and the bill is therefore without equity.

3. But suppose the bill was properly drawn and prayed for reformation, then I contend that the proof is wholly and entirely insufficient. The evidence is not inconsistent with the contract; it shows no more than the contract; besides, in all the admissions of both Mr. and Mrs. Saunders, they refer to "the contract under which they claim." The evidence in such cases, to set aside the writing sealed and witnessed by two witnesses, must be clear and unquestionable. See cases collected in Reavis' Dig. p. 302. Besides, when the writing is clear and certain, and no fraud charged, can parol testimony be allowed at all to contradict it? and if so, must not the witnesses to the deed be examined or accounted for? 19 Ala. 353; 18 Ala. 280; 12 Ala. 77; 14 Ala. 633. These authorities also show that the declarations of the debtor cannot affect the creditors, unless made before the debt is created, and this their evidence does not show.

GOLDTHWAITE, J.—The question as to the wife's taking, on the death of the husband, an absolute estate in the property she brought into the marriage, is entirely one of intention, to be collected from the general frame of the instrument; and such intention will prevail, although contrary to the express words of a particular clause. Spalding v. Spalding, Cro. Car. 185; Kentish v. Newman, 1 Pr. Williams, 235; Targus v. Paget, 2 Ves. 194; Allen v. Rumph, 2 Hill Ch. Rep. 1; Gause v. Hale, 2 Ired. Ch. 241; Gaillard v. Parcher, 1 McMullen Ch. 358. This rule we apply in the present case with the less hesitation, for the reason that the settlement bears upon its face the most palpable marks, that it was drawn by a person who was not only entirely ignorant of legal forms, but incapable of expressing his meaning with clearness and precision. The clauses in the instrument which are relied on as passing the title to the administrator of the husband are, first, the declaration that nothing was intended by the instrument to deprive the parties of the benefit of the laws governing estates of deceased persons, after the death of the parties, which were then or might be passed, but that the full intent and meaning of the contract was, that it should "cease to be of any effect, void and dead, and the surviving party enjoy all the rights, privileges and immunities as

though no contract ever existed, or written instrument had between the parties, and nothing is intended to prevent the law from the control, management, &c., as though no contract did ever exist;" and secondly, the attestation clause in these words; "In witness whereof, and intending this instrument, with all its meaning, to cease to be of any effect, to be void, cancelled, annihilated, and forever cease to be of any meaning, and of no effect, at the death of either of the parties," &c. But the construction contended for by the defendant in error, upon these parts of the instrument, is inconsistent with the intention apparent from the first clause referred to, that the death of either of the parties was to operate to the personal benefit of the survivor, in relation to the property which formed the subject of the settlement. The words that "the surviving party should enjoy all the rights, privileges and immunities, as though no contract ever existed," show conclusively, as we think, that the death of either party was to effect a beneficial change to the survivor; and the prominence of this idea in the mind of the framer of the contract, as shown by the reiteration of the effect which the death of either of the parties would produce on the settlement, resulted, as we incline to think, from the fact that a personal advantage was intended to result to the survivor. As, however, this benefit was not to arise until the death of one of the contracting parties, it could not have related to property of which either was in the full and complete enjoyment before the happening of the event referred to, and must be confined to the property of which the deceased party, by the terms of the instrument, had the enjoyment and control during life.

By a recurrence to the other parts of the settlement, the view we have taken is not only supported, but becomes apparent even to real conviction. Considered with reference to the other clauses, no one can entertain a doubt, that the object of the parties was, to secure the wife in the separate and exclusive control of the property possessed by her before the marriage, and to protect it against the improvidence of her intended husband, by excluding it from the reach of his creditors; and it is impossible to suppose that provisions like these, which, from their very nature, must have been inserted for the permanent benefit of the wife, were to be swept away

at the death of the husband, and his administrator invested with rights in relation to the property, not only greater than the intestate possessed, but which might defeat the object for which those rights were denied to such intestate. This supposition is so unnatural and improbable, so inconsistent with the other parts of the settlement, that we should require it to be evidenced by the most unequivocal terms before enforcing it.

We deem it unnecessary to go into the inquiry, as to the interest which the wife would take in the property of the husband, although we incline to the opinion, that it would be regulated by the statutes of descent and distribution, or, in the language of the settlement, "by the laws governing the estates of deceased persons." This question is, however, not presented by the record, and as the estate of the husband is reported insolvent, it is not probable that the question can arise upon this settlement. The only question we decide is, the one upon the construction of the instrument, as the case is now presented, that the wife, upon the death of the husband, took an absolute interest in the property brought by her into the marriage.

We see however no reason why the plaintiff in error should come into a court of equity. A party may come into that court to execute and establish marriage articles, or to reform settlements. But this case is not one of marriage articles. Everything has been done which the parties intended, and the contract is a final and complete act, presenting simply a question of construction, for the determination of which a court of law is equally as competent as a court of chancery.

It follows that there was no error in the decree of the Chancellor, which is here affirmed at the costs of the plaintiff in error.