Gibson v. Land.

27 . 117<br>94   618

# GIBSON vs. LAND.

[DETINUE BY HUSBAND, SUING ALONE, FOR A SLAVE IN WHICH HIS WIFE HAD A VESTED REMAINDER, AGAINST PURCHASER FROM DECEASED TENANT FOR LIFE.]

1. *Pleading—Descriptive words mere surplusage and cause no variance.*—If the plaintiff in detinue, in his writ and in the commencement of his declaration, describes himself as suing " *as trustee for his wife*", the superadded words are mere surplusage, or *descriptio personæ ;* and although the endorsement on the writ describes the slave sued for to be the separate property of the wife, while the declaration avers that plaintiff "was possessed as of his own property", there is no variance of which the defendant can take advantage, either by moving to strike the declaration from the file, or by craving oyer of the writ and endorsement thereon and demurring to the declaration.
2. *Agreement discharging jury, and submitting cause to decision of judge, held equivalent to demurrer to evidence, and waiver of all previous exceptions to admissibility of evidence.*

Gibson v. Land.

The bill of exceptions, after setting out all the evidence in the case, together with several exceptions reserved by defendant to the rulings of the court on the admissibility of certain portions of it, proceeded thus—"This being all the evidence, and the value of the slave and the damages for her detention having been agreed upon by the parties, and the jury having been discharged by their consent; and it having been further agreed, that if in the opinion of the court the law upon the foregoing facts was with the plaintiff, a judgment should go in his favor for said negro and damages and costs of suit, as on jury and verdict, and that if the law was with the defendant, judgment should go in her favor"; and then recited the judge's decision in favor of plaintiff, and defendant's exception thereto : *Held,* that the agreement was a waiver of all objections and exceptions previously made and reserved to the admissibility of evidence, and that the court was bound to take the facts which the evidence tended to prove as the admitted facts of the case.

3. *Construction of bequest to testator's wife during her life or widowhood, and if she married, then over to his daughter.*—A bequest was in these words : " I lend unto my beloved wife, *during her natural life or widowhood,* all my land, also one negro girl called Sarah. * * * Item, my will and desire is, at the death or marriage of my wife, that my son may have my land, to-him, his heirs, and assigns forever. Item, I likewise desire, *if my wife marries,* that my eldest daughter may have the negro girl" : *Held,* that the *quasi* remainder of the daughter was not contingent, but vested—that she took equally on the death or second marriage of her mother.

4. *Executor's assent to legacy, and its effect.*—If a life estate in a slave is bequeathed to one person, with a vested remainder to another, the assent of the executor to the legacy of the particular estate is an assent to the remainder, and renders the interest of the remainder-man, which was previously equitable and inchoate, a complete legal interest.

5. *Husband may maintain detinue in his own name, without joining wife, to recover slave in which she has vested remainder, after termination of life estate.*—If a slave is bequeathed to one person for life, with a vested remainder to an unmarried woman, who subsequently (and after the slave has gone into the possession of the first taker with the executor's assent) marries, her husband may, after the termination of the life estate, maintain detinue in his own name, without joining his wife, against a purchaser from the person having the particular estate ; Chilton, C. J., and Goldthwaite, J., resting the decision on the ground, that marriage vests in the husband the absolute interest in all the wife's personal chattels which she has in actual possession, and the right to recover by suit her personal chattels held adversely by others ; and Rice, J., holding that the absolute title was vested in the husband.

Appeal from the Circuit Court of Cherokee.

Tried before the Hon. John E. Moore.

Detinue for a slave named Eve, which the plaintiff claimed under the will of his father-in-law, Nathan Saunders, deceased, who bequeathed the mother of said slave to his wife,

Mary Saunders, during her life or widowhood, with remainder to his daughter Elizabeth, who is now plaintiff's wife ; while the defendant claimed under a purchase from said Mary Saunders, during her lifetime, and while said negro was in her possession with the assent of her husband's executor.

In the writ, and also in the commencement of the declaration, the plaintiff is described as "James Land as trustee for his wife, Elizabeth Land", and in the endorsement on the writ the negro sued for is said to be "the separate property of the within named Elizabeth." The declaration contained two counts, which were as follows :—

"For that whereas the said plaintiff, heretofore" &c., "delivered to the said defendant a certain negro woman slave, named Eve, aged about thirty-five years, and of great value", &c., "to be re-delivered by the said defendant to the said plaintiff, as trustee as aforesaid, when he, the said defendant, should be thereunto afterwards requested ; yet the said defendant, although he was afterwards requested by plaintiff so to do, hath not as yet delivered the said negro woman slave to the said plaintiff, but hath hitherto wholly neglected", &c.

"And whereas the said plaintiff, heretofore" &c., was lawfully possessed of a certain other negro woman slave, named Eve, of great value," &c., "as of his own property, and being so possessed thereof, he, the said plaintiff, afterwards casually lost the said last-mentioned negro out of his possession, and the same afterwards" &c., "came to the possession of the said defendant by finding ; yet the said defendant, well knowing the slave to be the property of said plaintiff, and of right to belong and appertain to him, hath not as yet delivered said negro woman to said plaintiff, although afterwards requested so to do," &c.

The defendant moved to strike the declaration from the files, on account of a variance between it and the writ ; but the court overruled the motion. She then craved oyer of the writ, with the endorsement thereon, and demurred to the declaration ; and the demurrer was also overruled.

All the evidence is set out in the bill of exceptions ; but, as it is substantially stated in the opinion of Mr. Justice Rice, it is unnecessary to repeat it here. Several exceptions were reserved during the trial to the rulings of the court in the

admission of evidence, and these also are stated in the bill of exceptions ; but the opinion of the court, on the effect of the agreement hereinafter copied, renders further notice of them immaterial. The bill of exceptions then proceeds as follows : "This being all the evidence, and the value of the slave and the damages for her detention having been agreed upon by the parties, and the jury having been discharged by their consent ; and it having been further agreed, that if in the opinion of the court the law upon the foregoing facts was with the plaintiff, a judgment should go in his favor for said negro and damages and costs of suit, as on jury and verdict, and that if the law was with the defendant, a judgment should go in her favor ; and it being the opinion of the court, that on the foregoing facts the law entitled the plaintiff to a judgment, the same was so awarded in favor of the plaintiff ; to which the defendant excepted."

The refusal to strike the declaration from the files, the overruling of the demurrer to the declaration, the rulings of the court on the evidence to which exceptions were saved, and the rendition of judgment for the plaintiff on the agreed facts, are now assigned for error.

D. W. BAINE and WHITE & PARSONS, for appellant :

1. The writ is in the name of James Land as trustee for his wife, and the bond and affidavit show the property sued for to be the separate property of the wife. The words "as trustee," &c., indicate the character in which he sues, and are not merely *descriptio personæ.*—1 Chitty's Pl. pp. 250–51 ; 2 Dev. Law R. 156. The character in which the plaintiff sues is not clearly indicated in the declaration. If the declaration be held to conform to the writ, the court should have rendered judgment for the defendant, as there is no proof tending to show plaintiff's right to recover in his fiduciary capacity ; and if it be held a declaration in the name of James Land individually, then it is fatally variant from the writ, and the court should have struck it from the files. 1 Chitty's Pleadings, *supra;* 2 Dev. Law R. 156 ; Canning v. Davis, 4 Burr. 2417 ; Chapman, Governor &c., v. Spence, 22 Ala. 588 ; Elliott v. Smith & Co., 1 *ib.* 74 ; Granberry v. Wellborn, 4 *ib.* 120 ; Otis v. Thorn, 18 *ib.* 395. And after

the writ had been set out on oyer, the court should have sustained the demurrer to the declaration.—Teer v. Sanford, 1 Ala, 525; McDonald v. Dodge & McKay, 10 *ib.* 529; 3 Stew. 267; *ib.* 322. There is certainly as great a variance between "James Land as trustee" and James Land individually, as there was between Reuben Chapman as governor and Reuben Chapman individually.

2. The deposition of B. Saunders should have been suppressed.—Colgin v. Redman, 20 Ala. 658.

3. If the plaintiff is entitled to recover at all, the suit should have been brought in the joint names of Land and wife. If Land had died before suit brought, the cause of action would have survived to his wife.—Mason v. McNeill's Executors, 23 Ala. 216; Johnson v. Wren, 3 Stew. 172; Turner v. Davis, 1 B. Mon. 152; King v. Baldridge, 7 *ib.* 535. If the cause of action would survive to the wife, upon the death of the husband without reducing it into actual possession, then the wife must be joined in an action for its recovery.—Clapp v. Stoughton, 10 Pick. 470; McGruder v. Stewart, 4 How. (Miss.) R. 214; Haile v. Palmer, 5 Misso. 419. The reason of the rule is, that the husband, if he could sue alone, might defeat the wife's survivorship (which the law favors) before he reduced the property into possession. To sustain the right of James Land to bring this suit in his own name, will be to hold that the mere bringing of suit by the husband alone, for his wife's choses in action, is a sufficient reduction into possession to defeat the wife's survivorship.

There are many cases which hold, that the husband, where the cause of action accrues during coverture, may, at his election, either sue alone, or join with his wife; but it is believed that all these are cases in which the husband's right to the property had become perfected by a constructive possession in him; and no case has been found, in which the husband has been allowed to sue alone, where the wife's right of survivorship has been recognized. There is no reason for the distinction between causes of action accruing before and after marriage, so far as the joinder of the wife is concerned, except upon the ground that, in most cases of actions accruing after marriage, the wife's right of survivorship is barred. Haile v. Palmer, *supra.* In many of the cases in which the

husband has been allowed to sue alone, his right has been expressly placed on the ground that the wife's survivorship is barred.—Armstrong v. Simonton, 2 Murph. 351 ; Spiers v. Alexander, 1 Hawks, 70. In this State, the husband cannot bar the wife's survivorship by an assignment of her chose in action before he has reduced it into possession (George v. Goldsby, 23 Ala. 332) ; and *a fortiori* he cannot defeat her survivorship by bringing suit in his own name.

The above argument is predicated on the idea, that the cause of action in this case accrued during coverture ; but there is no proof in the record showing that the adverse possession commenced since the marriage, and the plaintiff must affirmatively show his right to recover.—Bott v. McCoy & Johnson, 20 Ala. 586.

4. Neither the plaintiff nor his wife takes any interest in the slave sued for under the will of Nathan Saunders, deceased. The interest which Mrs. Land took under the will in Sarah (the mother of the slave in controversy) was contingent, because the event on which her right depended (viz., the marriage of Mrs. Saunders) was uncertain and contingent. 4 Kent's Com. 205-6. There being nothing in the will showing an intention different from what the legal interpretation of the terms imports, the case of Luxford v. Cheek, Raym. 427, does not apply. The slave sued for, being born before the contingency happened, did not pass to Mrs. Land by the bequest of her mother.

But, even if the bequest of Sarah to Mrs. Land be construed vested and capable of passing Eve, yet the intention of the testator, as gathered from other parts of the will, was to confine the bequest to Sarah alone ; and that intention must prevail.—6 Port. 519. The fact that a negro woman is bequeathed, without embracing her increase, when the bequest is not to take effect until a future period, which may be remote, is entitled to some weight as indicating an intention to confine the bequest to her alone. The probability of her having children seems to have afterwards occurred to the testator, and he accordingly provides for that event, by giving two of the children to his other two daughters, and the remainder of his estate is to be divided among his four children. The " remainder" of his estate, as here used, must have

been intended to embrace the increase of Sarah born during his wife's estate, and not bequeathed to his two daughters. There was no other property to which the clause could apply, unless it be held that the testator intended his estate to be kept open for a long period, which has in fact amounted to more than half a century, merely for the division of his household furniture, which, in all probability, did not equal in value the debts charged on it. This construction, too, would nearly equalize the shares of the children; and this is a circumstance to be looked to in arriving at his intention.

JAMES B. MARTIN and J. J. WOODWARD, *contra:*

1. If there was a variance between the writ and declaration, it should have been pleaded in abatement, and could not be reached by motion or demurrer.—Curry & Co. v. Paine, 3 Ala. 154 ; Palmer v. Lesne, *ib.* 741 ; Otis v. Thorn, 18 *ib.* 399 ; Turner v. Brown, 9 *ib.* 866 ; 9 Port. 195 ; 24 Ala. 428. The motion to strike the declaration from the files, is only allowed where there is such a total departure as renders the declaration a nullity.—Chapman v. Spence, 22 Ala. 586. The endorsement of the cause of action is no part of the writ, and is not therefore reached by the motion which applied to the writ. It is simply intended to give the defendant notice of the complaint which he is required to answer.—Martin v. Tenison, 13 Ala. 21 ; *Ex parte* Ryan, 9 *ib.* 90 ; Wharton v. Franks, 9 Port. 252 ; Sexton v. Rone, 7 Ala. 829 ; Summerlin v. Dowdle, 24 *ib.* 428.

2. There was no ground for the suppression of the deposition of B. Saunders.

3. This suit, as shown by the declaration, is in the name of James Land in his own right; and although, in the caption of the declaration, he describes himself as trustee of his wife, yet the character of the suit is determined by the body of the declaration.—Tate v. Shackelford, 24 Ala. 510 ; Godbold v. Meggison, 16 *ib.* 142 ; Williams v. Hinkle, 15 *ib.* 719 ; 8 *ib.* 791 ; 4 *ib.* 271. To authorize a recovery by the plaintiff, he must show a complete legal title in himself; and whether that title accrued in one way or another, in his own right or that of another, is immaterial to the defendant : the only question is, whether the defendant wrongfully detains the slave from the plaintiff.

4. All the chattels personal of the wife, in her possession (actual or implied) at the time of the marriage, are vested absolutely in the husband ; and for their recovery he may sue in his own name.—1 Chitty's Pleadings, p. 31 ; 3 Term R. 631 ; 1 Barn. & Ald. 218 ; Clancy on Husband and Wife, pp. 1 to 4. The testator's widow took possession of the mother of the slave in controversy under the will, and was so holding at the time said slave was born, and also at the time of the intermarriage of Elizabeth (the remainder-man) with this plaintiff. The possession of the widow, who was the tenant for life, was the possession of the remainder-man. The right to the enjoyment occurred after the marriage—to-wit, in 1847, when the widow married, or in 1851, when she died ; which entitled the husband to sue in his own name. Clancy's H. & W. pp. 2 to 8 ; Pitts v. Curtis, 4 Ala. 350 ; Hopper v. McWhorter, 18 *ib.* 229 ; Price v. Tally's Adm'rs, *ib.* 23 ; Broome v. King, 10 *ib.* 819 ; Mitchell v. Cowsert and Wife, 20 *ib.* 186 ; 1 Murph. 41 ; Spiers v. Alexander, 1 Hawks, 70 ; Woodley v. Findley, 9 Ala. 716. The furthest that the authorities would justify us in going, in a case of this character, would be to say that the husband (as he chooses) may or may not join the wife.—Authorities last cited ; Philleskirk v. Pluckwell, 2 M. & S. 393. The proof shows that the widow held the slave for at least twenty-five years after the plaintiff's marriage, and after (of course) his rights by marriage accrued ; and it is clear, therefore, that the wife's right, at the time of the marriage, was not a chose in action, but a vested interest with the legal possession.—Authorities *supra.*

5. Admitting that the principle here contended for would enable the husband, by merely bringing suit, to defeat the wife's right of survivorship ; yet this is no argument against his right to maintain the suit in his own name. There is a large class of cases, in which the husband may, at his election, either sue alone, or join his wife ; and in which, if she be joined and her husband die, the action will survive to her, and if not, will go to the husband's legal representative. This is always true where the wife is the meritorious cause of action.—Authorities *supra.*

6. Under the will of Nathan Saunders, plaintiff's wife

(Elizabeth) took a vested, not a contingent remainder. 1 Fearne on Remainders, p. 6, notes; Sheffield v. Orrery; 3 Atk. 283, and authorities there cited. The gift of Sarah was, in legal contemplation, a gift of her increase, except as to those children of which a different disposition is made. Strong's Executor v. Brewer, 17 Ala. 706; Wilks v. Greer, 14 *ib.* 437.

RICE, J.—In Chapman, Governor &c., v. Spence *et al.*, 22 Ala. 588, the writ showed that Reuben Chapman in his individual capacity was the plaintiff in it; but the declaration showed that "the Governor of the State of Alabama" was the plaintiff in it: it was held that such a writ would not support such a declaration, and that the declaration was properly stricken from the file, on a motion duly made to that effect.

The principle recognized in that case is, that a writ sued out in favor of one person will not support a declaration in favor of another person. The principle is sound, but it has no application to the present case; for here, James Land is the plaintiff in the writ and the plaintiff in the declaration. The words " as trustee for his wife, Elizabeth Land," which follow his name in the writ and in the commencement of the declaration, may well be treated as mere surplusage, or *descriptio personæ.*—Arrington v. Hair, 19 Ala. 243; Tate v. Shackelford, 24 *ib.* 510; Aguttar v. Moses, 2 Stark. Rep. 499; 1 Saund. Pl. & Ev. 260; Innerarity v. Kennedy, 2 Stew. R. 156; Biddle v. Wilkins, 1 Peters, 693.

Where the same person is the plaintiff in the writ and in the declaration, neither a variance between the writ and declaration, nor a variance between the endorsement on the writ and the declaration, can be reached by craving oyer of the writ and the endorsement thereon and demurring to the declaration.—Summerlin v. Dowdle, 24 Ala. 428; Curry v. Paine, 3 *ib.* 154; Sexton v. Rone, 7 *ib.* 824.

Each count of the declaration is good, and the counts are properly joined. The plaintiff in the writ is the plaintiff in the declaration; and there is no error in overruling the motion " to strike *the plaintiff's declaration* from the file", nor in overruling the demurrer to the declaration.

A demurrer to evidence is an admission of its competency, and is, therefore, a waiver of all exceptions previously taken to its competency.—Foster v. McDonald, 5 Ala. 376. *A fortiori*, an agreement by the parties in an action of detinue for a slave, entered into after the plaintiff has submitted all his evidence to the jury, that the value of the slave is a certain specified sum, that the damages for the detention amount to a certain specified sum, that the jury be discharged, and "that if, in the opinion of the court, the law upon the foregoing facts was with the plaintiff, a judgment should go in his favor, for said negro, and damages and costs of suit, as on jury and verdict, and that if the law was with the defendant, judgment should go in her favor",—is a waiver of all objections and exceptions which had been taken in relation to the competency or admissibility of the evidence, prior to the time when said agreement was made. By such an agreement, the court is bound to take the facts which the evidence tended to prove, as the admitted facts of the case; and the only question not waived by such agreement is, whether, upon the facts of the case thus agreed on by the parties, the law is with the plaintiff, or with the defendant.

The material facts thus agreed on in this case, may be thus stated: Nathan Saunders, of South Carolina, made his will in 1793, and died. In 1794, his will was admitted to probate, in that State. Its material provisions are in the following words, to-wit:—

"Item, I lend unto my beloved wife, Mary Saunders, during her natural life or widowhood, all my land, also one negro girl called Sarah, ten head of cattle, four head of horses, also my stock of hogs, household and kitchen furniture, for the support of her and children. Item, my will and desire is, at the death or marriage of my wife, that my son Bartlett may have my land, to him, his heirs, and assigns forever. Item, I likewise desire, if my wife marries, that my eldest daughter may have the negro girl; and if the negro should have children, my desire is, that my second daughter may have her first child, likewise my third and last daughter the said girl's second child. Likewise, my desire is, after my just debts is paid, and at the decease or marriage of my wife, that all the remaining part of my estate be equally divided between my

four children, or the survivors of them, to them, their heirs, and assigns forever."

Elizabeth was the eldest daughter of the testator. She married the plaintiff (James Land) in 1808 or 1810, in South Carolina, where they then resided, and she is still the wife of the plaintiff. Not long after the death of the testator, all the debts of the estate were paid, and the negro girl Sarah went into the possession of his widow, under the will, and, whilst in her possession, gave birth to several children, among whom was the negro girl Eve, who is sued for in this action, and who is the *fifth* child of Sarah. The girl Eve was born about the year 1815, and continued in the possession of said widow in South Carolina many years. The assent of the executor to the bequest of Sarah, before the plaintiff was married, is sufficiently proved, and is not questioned. The widow married in 1847, and died in 1851, before this suit was commenced. Her last husband died between 1847 and 1851. The appellant, at the commencement of this suit, had possession of Eve (the negro here sued for), and " claimed her under a purchase made from the said Mary Saunders while the negro was in her possession." The value of Eve and of her hire was agreed on by the parties.

The cardinal rule in construing wills requires the court to collect the intention of the testator from the whole will, and to give effect to such intention, if consistent with law, although contrary to the express words of a particular clause ; and in searching after this intention, it is just to notice whether or not the instrument, on its face, bears evidence that it was drawn by a person skilled in language and law.—Saunders v. Saunders, 20 Ala. 710 ; Hamner v. Smith, 22 *ib.* 433.

" It sometimes happens, that a remainder is limited in words which seem to import a contingency, though in fact they mean no more than would have been implied without them, or do not amount to a condition precedent, but only denote the time when the remainder is to vest in possession."—Fearne on Remainders, pp. 241–242; Bromfield v. Crowder, 1 Bos. & Pul. New Rep. 313; Roe v. Briggs, 16 East's R. 406; Goodtitle v. Whitby, 1 Burr. R. 228 ; Boraston's case, 3 Coke, 19; Massey v. Hudson, 2 Meriv. R. 130.

In Fearne on Remainders, p. 6, note (d), the law which we

think precisely applicable to the will shown in the present case is thus laid down : "A case frequently occurs in practice, where a testator devises '' to his wife for her life, if she shall so long continue his widow ; and in case she marry, to A. in fee':—apparently, in this case, there is ground to contend that A.'s remainder is contingent, as the estate of the wife may end in one of two ways, her death or her marriage, and the remainder to A. is expressed to take effect only on her marriage ; but the courts have determined that it is merely an inaccuracy of expression, and that the intention of the testator is, that A. shall take in either event. They have, therefore, decided that A. shall take equally on the second marriage of the wife, and on her death without being married a second time.—Luxford v. Cheeke, 3 Lev. 125; Raym. 427, and Lady Ann Fry's case, 1 Vent. 199."—Bowling v. Dobyns, 5 Dana's Rep. 442 ; 1 Cruise's Dig. 188.

The assent of the executor to the particular estate, is an assent to the estate in remainder. The property in the personal chattel being bequeathed in fractional interests in succession, at periods which must arrive, the interests of the first and subsequent taker will vest together.—Toller on Executors, 309; 1 Roper on Legacies, 394 ; McWilliams v. Ramsay, 23 Ala. 813; Finley v. Hunter, 2 Strob. Eq. Rep. 208.

Before the assent of an executor to a bequest of such a chattel, the interest of the legatee in it is *equitable* and inchoate.— Vanderveer v. Alston, 16 Ala. 494 ; 2 Williams on Executors, 844–845; Thomas v. White, 3 Litt. R. 180; Woodgard v. Threlkeld, 1 Marsh. R. 10. But the assent of the executor, when given, has relation to the time of the testator's death, and renders the interest of the legatee a complete *legal* interest.—2 Williams on Executors, 844, 849, 850; Toller on Executors, 306; Howell v. Howell, 3 Iredell's Eq. Rep. 522.

In the present case, the estate of the wife, as the only remainder-man, in the slave Sarah (a personal chattel), was, at the time of the marriage, vested, complete, and *legal.* The actual possession was where, according to law, it should have been—that is, with the tenant of the particular estate. Afterwards, and during the continuance of this possession, Sarah gave birth to Eve, and both these slaves continued for several years afterwards with the tenant of the particular es-

tate. If the possession of the tenant of the particular estate ever was adverse to the remainder-man, it certainly did not become so until long after the birth of Eve. The particular estate had determined before this suit was commenced, and the wife of the plaintiff is still living. Upon the facts here shown, my opinion is, that the marriage vested the aforesaid interest of the wife in the husband, and that, as soon as the particular estate determined, he was entitled to the immediate possession, and to maintain detinue to recover the slave . Eve.—1 Bright on Hus. & Wife, 34 ; 2 *ib.* (Appendix), 441 ; Macqueen on Hus. & Wife, 18, 19 and 46; Magee v. Toland, 8 Porter's R. 36; Pitts v. Curtis, 4 Ala. 350; Broome v. King, 10 *ib.* 819; Machen v. Machen, 15 *ib.* 373; Lenoir v. Rainey, 15 *ib.* 667; McDaniel v. Whitman, 16 *ib.* 343 ; Whitaker v. Whitaker, 1 Dev. R. 310 ; Granbury v. Mhoon, 1 *ib.* 456 ; Pettijohn v. Beasley, 4 *ib.* 512 ; Miller v. Bingham, 1 Iredell's Eq. R. 423; Daniel v. Daniel, 2 Rich. Eq. R. 118; Ordinary v. Geiger, 1 Brevard's R. 484 ; Brooks v. Penn, 2 Strob. Eq. Rep. 114 ; Dade v. Alexander, 1 Wash. R. 30; Banks v. Marksberry, 3 Litt. R. 275 ; Morrow v. Whiteside, 10 B. Monroe, 412 ; Wilks v. Greer, 14 Ala. 437; Strong v. Brewer, 17 *ib.* 706; Pollard v. Merrill, 15 *ib.* 174.

Whether, in case the husband should die before he obtains actual possession of the slave sued for, leaving his wife surviving, she would or would not be entitled to the slave, is a question not necessarily calling for a decision in this case ; and upon that question I do not consider myself committed by the reasoning or decision in Mason v. McNeill, 23 Ala. 201.

Although there is a difference in the mode of reaching the conclusion, we all agree that there is no error in the record, and that the judgment must be affirmed.

CHILTON, C. J.—I agree in the conclusion attained by my brother Rice, but not in some of his reasons.

When the executor delivered the property to Mary Saunders, the widow of the testator, and the party entitled under the will of Nathan Saunders to a life interest, he assented to the legacy, and divested himself of all property, so that no further assent was required to vest the interest in the party entitled to the *quasi* remainder.

9

Marriage vests in the husband the absolute interest in all the wife's personal chattels which she has in actual possession. It vests in the husband the right to recover her personal chattels in specie, by detinue or replevin, held adversely by others; for, having the right to the possession, he has the right to recover the property and reduce it to possession, without joining the wife, although, as in case of bonds and promissory notes, which are assignable, the property might survive to the wife, in the event of the husband's death before he reduced it into possession. It is unnecessary, however, now to decide the question of survivorship, as it does not arise.

GOLDTHWAITE, J.—I concur with the Chief Justice.